CHRIS ZHEN (State Bar No. 275575)
chris.zhen@zhenlawfirm.com
HOGAN GANSCHOW (State Bar No. 256137)
hogan.ganschow@zhenlawfirm.com
ZHEN LAW FIRM
5670 Wilshire Blvd #1800
Los Angeles, CA 90036
Telephone: (213) 935-0715

*Attorneys for Plaintiff*
OptraHealth, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| OPTRAHEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOTSCREW, INC., <br><br> Defendant. | Case No. 5:20-cv-8096- EJD <br><br> **OPTRAHEALTH, INC.'S OPPOSITION TO BOTSCREW'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date:       June 3, 2021** <br> **Time:       9:00 a.m.** <br> **Judge:       Honorable Edward J. Davila** <br> **Courtroom:  4** |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

1

## NOTICE OF MOTION

2

    Plaintiff OptraHealth, Inc. ("OptraHealth"), hereby respectfully files this Response to the

3 Rule 12(b)(6) Motion to Dismiss alleging the patent-in-suit is invalid under 35 U.S.C. § 101 and the

4 Complaint is not adequately plead. This Response is based on the attached Memorandum of Points

5 and Authorities, the Court's record in this action, including OptraHealth's Amended Complaint, as

6 amended, the patent-in-suit, their prosecution histories, all matters of which the Court may take

7 notice, and any other evidence and oral arguments presented at the hearing of the Motion or

8 requested by the Court. Accordingly, OptraHealth hereby respectfully requests this Court enter

9 Orders denying Defendant's Rule motion to dismiss for failure to state a claim under Rule 12(b)(6).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:20-cv-08096-EJD

1

1
2

# TABLE OF CONTENTS

3  **TABLE OF AUTHORITIES** ...........................................................................**4**

4  Cases ........................................................................................................4

5  Statutes ....................................................................................................5

6  Rules ........................................................................................................5

7  **MEMORANDUM OF POINTS AND AUTHORITIES**..................................**7**

8  I.  INTRODUCTION ...............................................................................7

9  II.  LEGAL STANDARDS .......................................................................9

10      a.  Patent Eligibility Under Section 101 ........................................9

11          i.  Step One: Whether Claims Are "Directed to"

12              a Patent-Ineligible Concept ...............................................10

13          ii.  Step Two: Whether the Complains Contain an "Inventive Concept"..11

14      b.  Motions Under Rule 12(b) 6 .....................................................12

15      c.  *Twombly–Iqbal* Pleading Standard ...........................................13

16  III.  FACTUAL BACKGROUND................................................................14

17      a.  The State of the Art and Problems Sought to be

18          Solved by the Relevant Claimed Inventions ...........................14

19      b.  The Solutions Devised by the Relevant Claimed Inventions

20          (i.e., What the Asserted Claims are Directed to) ....................15

21      c.  The Claimed Invention has multiple inventive aspects ..................15

22  IV.  ARGUMENT.......................................................................................17

23      a.  The Claims at Issue Are Directed to Patent-Eligible Subject Matter .............17

24      b.  The Asserted Claims Are Patent-Eligible Under Both Steps

25          of the Alice/Mayo Inquiry .......................................................17

26          i.  Step One: The Asserted Claims Are Not Directed to an

27              Abstract Idea ....................................................................17

28          ii.  Step Two: The Asserted Claims Contain an Inventive Concept..........20

2  **PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

c.   Defendant's Analysis is Legally and Factually Erroneous ...............................21

d.   OptraHealth's Claims Pass Muster Under Section 101 ...................................23

e.   OptraHealth's Pleads Sufficient Facts Under *Twombly-Iqbal*........................23

V.     CONCLUSION........................................................................................................26

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

1

## TABLE OF AUTHORITIES

2

*Cases*

3
*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,

4
      728 F.3d 1336 (Fed. Cir. 2013)...........................................................................12

5
*Alice Corp. Pty. V. CLS Bank Int'l*,

6
      134 S. Ct. 2347 (2014).............................................................9, 11, 17, 20, 20, 22

7
*Ancora Technologies, Inc. v. HTC America, Inc.*,

8
      908 F.3d 1343 (2018)...............................................................................10, 22

9
*Ashcroft v. Iqbal*,

10
      556 U.S. 662 (2009)................................................................................12, 13, 23

11
*Bascom Global Interest Servs., Inc. v. AT&T Mobility, LLC*,

12
      827 F.3d 1341 (Fed. Cir. 2016)..............................................................11, 13, 20

13
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...............................................13, 23

14
*Bill of Lading, 681 F.3d at 1341 (Fed. Cir. 2017)*.............................................................23

15
*Cellspin Soft, Inc. v. Fitbit, Inc.*,

16
      927 F.3d 1306 (Fed. Cir. 2019)............................................................................12

17
*Cousins v. Lockyer*,

18
      568 F.3d 1063 (9th Cir. 2019) ............................................................................12

19
*Diamond v. Diehr*, 450 U.S. 175, 187 (1981)......................................................................22

20
*Disc Disease Solutions, Inc. v. VGH Solutions*, 888 F.3d 1256 (Fed. Cir. 2018)..............24

21
*DDR Holdings, LLC v. Hotels.com L.P.*,

22
      773 F.3d 1245 (Fed. Cir. 2014)..........................................................11, 17, 20, 23

23
*Elec. Power Grp., LLC v. Alstom S.A.*,

24
      830 F.3d 1350 (Fed. Cir. 2016)....................................................................11, 18

25
*Enfish, LLC v. Microsoft Corp.*,

26
      822 F.3d 1327 (Fed. Cir. 2016)........................................................10, 17, 18, 19

27
*Finjan, Inc. v. Blue Coat Sys., Inc.*,

28
      879 F.3d 1299, 1303 (Fed. Cir. 2018)..................................................................11

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

*Fleming v. Pickard,*

    581 F.3d 922 (9th Cir. 2019) ................................................................12

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.,*

    714 F.3d 1277, 1283 (Fed. Cir. 2013).....................................................13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372 (Fed. Cir. 2017) ........13, 14, 23, 24

*Mace v. Ocwen Loan Servicing, LLC,*

    No. 16-CV-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018) ...................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008)........13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*

    132 S. Ct. 1289 (2012).........................................................9, 17, 20, 22

*McRO v. Bandai,* 837 F.3d 1299 (Fed. Cir. 2016)................................19, 19, 23

*Mendiondo v. Centinela Hosp. Med. Ctr.,*

    521 F.3d 1097 (9th Cir. 2008) ............................................................12

*Nalco Co. v. Chem-Mod, LLC,* 883 F.3d 1337 (Fed. Cir. 2018) ......................................24

*Procter & Gamble Co. v. QuantifiCare Inc.,* No. 17-CV-03061-LHK, 2017 WL

    6497629, at *25 (N.D. Cal. Dec 19, 2017) ...........................................12

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,*

    827 F.3d 1042 (Fed. Cir. 2016)..............................................10, 11, 20

*Trading Techs. Int'l, Inc. v. CQG, INC.,*

    675 F. App'x 1001 (Fed. Cir. 2017) .....................................................22

*Ultramercial, Inc. v. Hulu, LLC,*

    772 F.3d 709 (Fed. Cir. 2014)..............................................................9

*XY, LLC v. Trans Ova Genetics, LC,*

    968 F.3d 1323 (Fed. Cir. 2020)...........................................................22

**Statutes**

35 U.S.C. § 101

**Rules**

Fed. R. Civ. P. 8(a)(2)

1    Fed. R. Civ. P. 12

6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3
4
5
6

The Amended Complaint for patent infringement challenged contains enough facts to state a claim that is plausible on its face. OptraHealth has submitted an Amended Complaint together with this Opposition. Defendant's allegations are moot to the extent that the Amended Complaint deviates from Defendant's allegations.

7
8
9
10
11
12
13
14
15

Defendant has not met their high burden, especially at the pleadings stage, of overcoming the presumption of validity and proving by clear and convincing evidence that claims 1, 3 from U.S. Patent No. 10,754,882 ("Asserted Claims" of the '882 Patent or "Patent-in-Suit") are directed to an ineligible abstract idea. Likewise, Defendant has not met their high burden at the pleadings stage of overcoming the presumption of validity and proving by clear and convincing evidence, with mere argument, that the limitations of the Asserted Claims are somehow routine, well-understood, conventional, generic, pre-existing, commonly used, well-known, previously known, typical, and the like, including when viewed by one of ordinary skill in the art of as of the October 24, 2017 priority date for the '882 Patent.

16
17
18
19
20

Defendant ignores important claim limitations, and they ignore the claims as a whole, including as an ordered combination when erroneously alleging that the claims are directed toward an abstract idea of "simplify[ing] the process of understanding a health report." *See* Doc #25 at 1. Analogizing the patented invention to a practice that consists entirely of humans performing tasks misses the point of the invention which is to automate tasks that humans are capable of performing.

21
22
23
24
25
26
27
28

OptraHealth invented specific methods whereby health reports are retrieved through a machine-assisted interrogation process consisting of a person assistant device, a reporting system, and knowledge-graphic system, and a query-interrogation system. At the time of the invention of the asserted patent, retrieving and providing accurate results of health reports was time consuming and inefficient. OptraHealth's patent addresses these and other issues, claiming concrete technological improvements, including applying machine-learning to the task to automate the process, using a personal assistance device to provide an interface for a query-interrogation system, and applying a knowledge-graphic system to provide the accurate results to the user. OptraHealth's

1   innovative process frees up physician and other medical professional time and attention to focus on

2   areas that need the medical attention. OptraHealth's patent improved technology, including for the

3   machine-assisted processes, for personal assistance devices, and reporting systems, knowledge-

4   graphic systems, and query-interrogation systems.

5       Defendant ignores technologically inventive aspects, and the actual claim limitations, of

6   OptraHealth's patent. Defendant mischaracterizes the specification's discussion of the

7   technological background while omitting discussion of the technological systems and methods

8   described in the specification. *See* Doc #25 at 13. Further, instead of addressing all elements of the

9   independent claim Defendant merely provides conclusory remarks that the claim limitations are

10  conventional components used in their conventional roles. Defendant lacks any support for this

11  assertion, and, given the limited scope at this stage of the proceedings and the material disputes of

12  fact underlying both steps of the Mayo analysis. Defendant cannot clearly establish entitlement to

13  dismissal of the Amended Complaint as a matter of law.

14      Even if the Court deems the claimed invention set forth in each respective Asserted Claim

15  to be too abstract (which they are not), there is undeniably an inventive concept that appropriately

16  limits the claims.

17      Defendant's Motion should also be denied because the Asserted Claims are not unduly or

18  improperly preemptive, including of any alleged ends or abstract ideas.

19      In short, including when viewed properly as a whole, the claims are not abstract; they

20  constitute a concrete application of improved machine-assisted technology and application of a

21  personal assistance device; and they have novel, meaningful, and significant limitations which

22  preclude any finding of unpatentability.

23      Furthermore, and in the alternative, if the Court deems that a § 101 challenge is appropriate

24  in this case, genuine issues of material fact exist – such as, for example, whether the claimed

25  invention was "well-known," "routine," or "conventional" at the time of the invention; and whether

26  the claims preempt any abstract ideas – that preclude granting a Rule 12(b)(6) Motion especially at

27  this early stage. At a minimum, a decision on a motion to dismiss on the pleadings is inappropriate

28  when there are factual disputes to be resolved, including regarding whether the Asserted Claims

1  have meaningful limitations and/or inventive concepts based upon the state of the art at the time of

2  the invention, and including whether the claimed limitations are routine, well-known, conventional,

3  generic, existing, commonly used, well-known, previously known, typical, and the like at the time

4  of the invention.

5      The Amended Complaint also meets the pleading standard because OptraHealth has pled

6  sufficient factual allegations to make a facially plausible – not probable – claim for relief.

7

8  **II.    LEGAL STANDARDS**

9      **A.    Patent Eligibility Under Section 101**

10  A patent may be obtained for "any new and useful improvement unless the claims of the patent are

11  directed to "[l]aws of nature, natural phenomena, and abstract ideas." *Ultramercial, Inc. v. Hulu,*

12  *LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). The concern driving these exceptions is one of pre-

13  emption, or preventing "a monopoly over an abstract idea." *Alice Corp. Pty. V. CLS Bank Int'l*, 134

14  S. Ct. 2347, 2354 (2014).

15      The Supreme Court has cautioned, however, to "tread carefully in construing this

16  exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (citing *Mayo*

17  *Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293-94 (2012)). Indeed, an

18  invention "is not rendered ineligible for patent simply because it involves an abstract concept"

19  because, "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature,

20  natural phenomena, or abstract ideas." *Id*. (internal quotations omitted). Thus, courts must

21  "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that

22  integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-

23  eligible invention." *Id*. OptraHealth's patent describes and claims the latter; they integrate

24  technological building blocks into something more – something patent-eligible.

25      Courts apply a two-step analysis laid out in *Mayo* and reaffirmed in *Alice* to determine

26  whether patent claims are directed to ineligible subject matter. Under step one, the court must

27  "determine whether the claims at issue are directed to a patent-ineligible abstract idea." *Alice*, 134

28  S. Ct. at 2355. If the answer is "no," then the inquiry ends, and the claims are patent-eligible. *Id*. If

1   the answer is "yes," then the court must "consider the elements of each claim both individually and

2   'as an ordered combination' to determine whether the additional elements 'transform the nature of

3   the claim' into a patent-eligible application,' or, in other words, whether the claims contain an

4   "inventive concept." *Id*.

5         **1.       Step One: Whether Claims are "Directed To" a Patent-Ineligible Concept**

6         The Federal Circuit has reiterated that the step one "directed to" inquiry is a "meaningful"

7   one, focusing on "whether the claims involve a patent-ineligible concept, because essentially every

8   routinely patent-eligible claim involving physical products and actions involves a law of nature

9   and/or natural phenomenon," but, rather, on whether the "character [of the claims] as a whole is

10  directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed.

11  Cir. 2016) (internal quotations omitted). "It is not enough merely to identify a patent-ineligible

12  concept underlying the claim; [the court] must determine whether that patent-ineligible concept is

13  what the claim is 'directed to." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048

14  (Fed. Cir. 2016). The Federal Circuit has further cautioned, in considering step one, to not

15  "describe[e] the claims at such a high level of abstraction and untethered from the language of the

16  claims [because doing so] all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822

17  F.3d at 1337.

18        Where computer technology is involved, it is "relevant to ask whether the claims are directed

19  to an improvement to computer functionality versus being directed to an abstract idea." *Id*. At 1335.

20  Computers are improved not only through changes in hardware; "[s]oftware can make non-abstract

21  improvements to computer technology…." *Ancora Technologies, Inc. v. HTC America, Inc.*,

22  908 F.3d 1343 (2018) (citing *Enfish*, 822 F.3d at 1335; *Finjan*, 879 F.3d at 1304). The Federal

23  Circuit has several times held software claims to pass muster under Alice step one when sufficiently

24  focused on such improvements. *Id*.

25        Accordingly, where "the focus of the claims is on the specific asserted improvement in

26  computer capabilities," rather than "on a process that qualifies as an 'abstract idea' for which

27  computers are invoked merely as a tool," the claims will pass *Mayo* step one and be held patent-

28  eligible. *Id*. At 1335-36. The Federal Circuit has similarly found that a claim that provides a "new

and improved technique" that produces "tangible and useful result[s]" falls "squarely outside of those categories of inventions that are 'directed to' patent-ineligible concepts," and thus are patent-eligible at step one. *CellzDirect*, 827 F.3d at 1048; *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that claims that focus "on a specific improvement … in how computer could carry out one of their basic functions" are patent-eligible); *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (same).

### 2.    Step Two: Whether the Claims Contain an "Inventive Concept"

If, and only if, a court determines that the claims as a whole are "directed to" an abstract idea, then the court proceeds to step two, which is a "search for an 'inventive concept.'" *Alice*, 134 S. Ct. at 2355. Under step two, the court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. In other words, the court must determine whether the *entirety* of the *claim* amounts to a "patent upon the [ineligible concept] itself," or whether the claim covers a "patent-eligible application" of the ineligible concept. *Id*. The Federal Circuit has clarified, however, that "[t]he inventive concept inquiry requires more than recognizing that each element, by itself, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Indeed, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id*.

With respect to computer technology, an inventive concept will exist in claims that "recite a specific, discrete implementation of [an] abstract idea," where the "particular arrangements of elements is a technical improvement over prior art [methods]." *Id*. At 1351. In other words, claims directed to "a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) … that overcome[] existing problems [in the art]" are patent-eligible under step two. *Id*. at 1350-1351; *see also DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1257, 1259 (Fed. Cir. 2014) (holding that claims "amount[ing] to an inventive concept for resolving [a] particular Internet-centric problem" were patent-eligible).

1

**B.    Motions Under Rule 12(b)(6)**

2        Defendant's motion is brought under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is

3   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

4   a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

5   2008). "While a complaint 'need not contain detailed factual allegations' to survive a Rule 12(b)(6)

6   motion, 'it must plead enough facts to state a claim to relief that is plausible on its face." *Mace v.*

7   *Ocwen Loan Servicing, LLC*, No. 16-CV-05840-MEJ, 2018 WL 368601, 2* (N.D. Cal. Jan. 11,

8   2018) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation

9   marks and citations omitted)). "A claim is facially plausible when it "allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft*

11  *v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Here, the court must accept

12  "all factual allegations in the complaint as true and construe them in light most favorable to the non-

13  moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also Procter & Gamble*

14  *Co. v. QuantifiCare Inc.*, No. 17-CV-03061-LHK, 2017 WL 6497629, at *25 (N.D. Cal. Dec. 19,

15  2017) (finding an "obligation to construe the pleadings in the light most favorable to Plaintiffs"

16  when a claim presents an "extremely close call"). Issued patents are presumed valid, and such

17  presumption extends to section 101 subject matter eligibility; an alleged infringer asserting an

18  invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing

19  evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F. 3d 1306, Fed. Cir. 2019). "Any fact ... that is

20  pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.*

21        Although patent-eligibility under § 101 is decided as a matter of law, "[t]his legal conclusion

22  may contain underlying factual issues." *Accenture Global Servs., GmbH v. Guidewire Software,*

23  *Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). The Amended Complaint includes allegations that,

24  when properly accepted as true, preclude the grant of a motion to dismiss. *Cellspin Soft, Inc. v.*

25  *Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) (finding error by district court in ignoring allegations

26  that, when properly accepted as true, preclude the grant of a motion to dismiss).

27        In this case, the Amended Complaint allegations include "claims of the Patent-In-Suit,

28  including the asserted claims, when viewed as a whole, including as an ordered combination, are

Case No. 5:20-cv-08096-EJD            12            **PLAINTIFF'S RESPONSE IN OPPOSITION**
                                                    **TO DEFENDANT'S MOTION TO DISMISS**

1  not merely the recitation of well-understood, routine, or conventional technologies or components."
2  *See* Amended Compl. ¶ 3. Amended Complaint includes allegations that the claims are
3  improvements over inferior prior art including manual processes undertaken by physician and health
4  care professionals or by using rudimentary computer systems. *Id*. ¶ 4. Accordingly, because the
5  allegations must be accepted as true and construed in the light most favorable to OptraHealth, the
6  motion to dismiss must be rejected. In addition, given the limited record at this stage of the
7  proceedings, early dismissal is premature, especially where the factual record lacks certainty. *See*
8  *Bascom*, 2016 WL 3514158 at *6.

9       **C.     Twombly–Iqbal Pleading Standard**

10       All that is required in a pleading is to alert the defendant of what is alleged and plead the
11  elements of the causes of action. Federal Rule of Civil Procedure 8(a)(2) requires only a "short plain
12  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). With
13  that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal
14  sufficiency of the statement of the claim for relief." 5B C. *Wright & A. Miller, Federal Practice and*
15  *Procedure § 1356*, p. 354 (3d ed. 2004). Under Rule 8(a), a plaintiff need only plead "enough facts
16  to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
17  (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court
18  to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*
19  *v. Iqbal*, 556 U.S. 662, 678. "The plausibility standard is not akin to a probability requirement, but
20  it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (emphasis added).
21  Further, the Court "accept[s] factual allegations in the complaint as true and construe[s] the
22  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine*
23  *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

24       In the past Form 18 was used for patent suits, and the Federal Circuit held that compliance
25  with Form 18 "effectively immunize[d] a claimant from attack regarding the sufficiency of the
26  pleading." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) (citing *K-Tech*
27  *Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (internal citation
28  omitted)).

1    On December 1, 2015, Form 18 was abrogated by the Supreme Court; the Federal Circuit,

2    however, state that the Federal Circuit "never recognized such a distinction [between the

3    requirements of Form 18 and the Iqbal / Twombly standard]." *Lifetime Indus., Inc. v. Trim-Lok,*

4    *Inc.*, 869 F.3d 1372 (Fed. Cir. 2017).

5    OptraHealth provides substantially more allegations regarding BotsCrew's infringement

6    than the minimum required under Rule 8 with sufficient facts to put Defendant on notice of their

7    wrongful actions for the patent infringement cause of action.

8

9    **III.    FACTUAL BACKGROUND**

10   The claims of the Patent-in-Suit, which are the touchstone of Section 101 patentability have

11   significant differences, included as noted herein, which Defendant's Motion attempts to gloss over

12   with their oversimplified claim allegations.

13   **A.    The State of the Art and Problems Sought to be Solved by the Relevant Claimed**

14   **Inventions**

15   At the time of the Patent-in-Suit's priority date October 24, 2017, it was a cumbersome and

16   time-consuming process to retrieve health reports and communicate the health reports to consumers.

17   While the patent solves the above problem with specific improvements in computer capabilities,

18   Defendant erroneously insinuates that the entirely of the Asserted Claims are directed to

19   "technologies for retrieving information from healthcare reports using a personal assistance device."

20   *See* Doc #25 at 9, *passim*. Including as of the priority date for the Patent-in-Suit, there have been

21   many, albeit inferior, means outside of the claimed invention for achieving the ends of retrieving

22   and providing health reports to consumers. For example, as noted in the specification

23   "understanding a health report requires a considerable amount of time and effort." *See, e.g.*, '882

24   Patent at col 1:21-25. Retrieving health reports typically required a physician to read over the report

25   and consult a consumer after the physician has reviewed the health reports and any associated

26   documentation. In some cases, the consumer needs to wait a considerable amount of time leading

27   to a "lack of communication between a healthcare professional and a consumer [that] can lead to

28   many unfavorable circumstances." *See, e.g.*, '882 Patent at 1:26-28.

Another inferior method would be to rudimentary computer capabilities for report retrieval and lookup including using basic keyword searches for the health reports and any associated documentation. The health reports and associated documentation do not have a structured organization. Such basic keyboard searches typically require expertise in use of the such systems or technical medical knowledge. Most of the terms are unfamiliar to individuals not related to the healthcare field. *See, e.g.*, '882 Patent at 1:21-23. Consumers are typically not provided access to these prior art systems to perform their own queries on the systems. Consumers would also not have the technical knowledge to formulate the keywork searches to interact with the prior art systems.

**B.     The Solutions Devised by the Relevant Claimed Invention (i.e., What the Asserted Claims are Direct to)**

The Asserted Claims are directed to specific improvements in personal assistance devices such as mobile devices and machine-assisted functionality and capabilities. Among other things the claim invention improves functionality of retrieving information from a health report through a machine-assisted interrogation process including a personal assistance system, a reporting system, a knowledge-graphic system, and a query-interrogation system. Rather than being directed to abstract ideas, the Asserted Claims are directed to concrete applications of inventive concepts.

Independent asserted claim 1 of the '882 Patent is direct to, *inter alia*, an improved method of hardware, software, network communication, for retrieving information from a health report through a machine-assisted interrogation process by creating a knowledge graph and knowledge corpus to provide the query-interrogation capability via a personal assistance device.

**C.     The Claimed Inventions have multiple inventive aspects.**

The Asserted Claims have multiple inventive and meaningful aspects. Without limitation, independent claim 1 of the '882 Patent has meaningful and inventive aspects including application of machine-learning to the problem of health report retrieval, creating a knowledge corpus and knowledge-graphing system to provide a query-interrogation system for providing the health reports to consumers. Automation by application of machine-learning automates tasks that would otherwise be inefficient, costly, and unreliably performed by humans.

1    **1.    The Claimed Inventions have many concrete aspects.**

2       There is nothing abstract about the claimed inventions. For example, the Asserted Claims

3    have concrete, non-abstract aspects such as the personal assistance device and the computer servers

4    to performed the machine-assisted and automated tasks of compiling the knowledge corpus for

5    specific health reports through a knowledge-graphing system.

6    **2.    The Claimed Invention has many concrete benefits, including to their**

7    **inventiveness**

8       The patented invention provides fast, efficient, machine-assisted automated process that

9    reduce need for manpower providing a cost-effective, consistent and reliable system for consumers.

10   The technology embodied in the Patent-in-Suit solved the above problems of the inferior prior art

11   systems, and other problems. The claimed invention comprises superior ways to achieve the ends

12   of retrieving information from a health report using a machine-assisted interrogation process. The

13   claimed process of the asserted claims conveniently and efficiently receives queries relating to

14   health reports from users of the system and provides relevant responses. The claimed invention

15   empowers consumers to inquiry of their health reports via the all-present personal assistance devices

16   or mobile devices without the time-consuming process of scheduling phone calls or in-person visits

17   and waiting for health care professionals to read through their health reports to respond back to the

18   users. In addition, the claimed invention provides for a conversational capability of the query-

19   interrogation process by creating a knowledge corpus through a knowledge-graphing system on the

20   fly – e.g., the creation of the knowledge-graphing system may be prompted by the query from the

21   user of the system. Use of the knowledge corpus enables the innovative method to assimilate and

22   extract a large amount of information related to the query and health report. The claims of the Patent-

23   in-Suit are directed to specific improvements inherent to computers and machine-assisted methods.

24       Among other things, the claimed invention improves health care computer systems and

25   personal assistances devices such as consumers personal computers and mobile devices. Including

26   as noted in the Patent-in-Suit, the claimed technologies comprise innovative methods which are

27   faster, avoids costly human intervention including physician time, and allow consumers to directly

28   inquire regarding their health reports using personal computers or mobile device. The Patent-in-Suit

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

1   thus provides concrete applications that improve computer and machine-assisted technology,

2   including processing health reports by compiling a knowledge corpus to provide the capability of a

3   machine-assisted interrogation process.

4

5   **IV.   ARGUMENT**

6       **A.   The Claims As Issue Are Directed to Patent-Eligible Subject Matter**

7          OptraHealth's patent provides tangible innovative improvements to computer technology by

8   providing a query-interrogation system via creating a knowledge corpus and knowledge graphing

9   system that exploits the capabilities of automated systems. Notably, the claims here do not simply

10  use computers as a tool to accomplish an ordinary task or to solve a problem existing in the pen and

11  paper worlds. Rather, the new and specific knowledge graphing system and machine-assisted

12  method provides solutions to recognized technological issues that are unique to mobile devices and

13  machine-assisted methods. Including for these reasons, the Asserted Claims are patent-eligible

14  under both steps of the *Alice/Mayo* inquiry. *See Enfish*, 822 F.3d at 1339; *DDR Holdings*, 773 F.3d

15  at 1257.

16         Defendant fails to meet their burden of clearly establishing that no material issues of fact

17  remain and that they are entitled to judgment as a matter of law. Ultimately, as explained below,

18  Defendant attempts to misconstrue the claims to ignore their true nature, including the specific

19  improvements they provide over conventional machine-assisted methods at the time of the

20  invention. Accordingly, there is no basis to find – especially given the limited record present at this

21  stage of the proceedings – that the Asserted Claims are not patent-eligible.

22      **B.   The Asserted Claims are Patent-Eligible Under Both Steps of the Alice/Mayo**

23           **Inquiry**

24          **1.   Step One: The Asserted Claims are Not Directed to an Abstract Idea**

25         The Asserted Claims are directed to patent-eligible subject matter—not abstract ideas—

26  including because "the focus of the claims is on [a] specific improvement" to retrieving and

27  providing accessibility to health reports, not "on a process that qualifies as an "abstract idea" for

28  which computer are invoked merely as a tool." *Enfish*, 822 F. 3d at 1335-36. The Asserted Claims

1   embody an improvement in the functioning of a mobile device by using machine-assisted methods

2   for retrieving health reports, not an abstract idea implemented with conventional components. *See*

3   *id*. at 1338.

4        The Asserted Claims here are analogous to those found patent-eligible in *Enfish*. In *Enfish*,

5   the Federal Circuit explained that while the self-referential database stored the same information, it

6   did so, unlike a relationship database, using a single table with an additional row. *Id*. at 1332-33.

7   The court further explained that the self-referential database provided multiple benefits, including

8   "faster searching of data," "more effective storage of data," and "more flexibility in configuring the

9   database." *Id*. In *Enfish*, the Federal Circuit criticized the district court for oversimplifying the

10  claims as covering simply "the concept of organizing information using tabular formats." Id. at

11  1337. The Court cautioned that "describing the claims at such a high level of abstraction and

12  untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the

13  rule." Id. The Federal Circuit concluded that the claims were "directed to a specific improvement

14  to the way computers operate," not directed to an abstract idea or preempt any form of storing

15  tabular data, and reversed the district court's summary judgment order. *Id*.

16       As in *Enfish*, there in nothing abstract about the Asserted Claims of OptraHealth's patent.

17  Just as the district court in *Enfish* inappropriately oversimplified the claims as covering "the concept

18  of organizing information using tabular formats," Defendant inappropriately oversimplified the

19  claims here as covering on the idea of [simplify[ing]] the process of understanding a health report.

20  *See* Doc #25 at 13. To the contrary, the claims are not simply directed to any form of "understanding

21  a health report", but rather describe "specific improvements" comprising using a machine-assisted

22  method by creating a knowledge corpus through a knowledge graphing system. To simply the claim

23  language would completely unmoor the invention from the claim language (*Enfish*). In other words,

24  as in *Enfish*, the claims represent a "specific implementation of a solution of the arts." *Id*. at 1339.

25  Thus, as the Federal Circuit recently reemphasized in *Elec. Power*, the claims here are not directed

26  to an abstract idea because they focus "on a specific improvement … in how computer [i.e., servers

27  and mobile devices] could carry out one of their basic functions [i.e., using machine-assisted method

28

1   for retrieving health reports by creating a knowledge corpus to provide a query-interrogation

2   system]." 2016 WL 4073318 at *4. OptraHealth's patent is thus not directed to an abstract idea.

3   Defendant's reduction of the claim language is precisely the reduction that the Federal Circuit

4   caution against. In the *McRO* decision, the Federal Circuit reversed the district court's finding of

5   ineligibility for claims that "aim to automate a 3-D animator's tasks, specifically, determining when

6   to set keyframes and setting those keyframes." *McRO v. Bandai*, 837 F.3d 1299, 1307 (Fed. Cir.

7   2016). In so holding, the Federal Circuit held, among other things, that (1) processes that automate

8   tasks that humans are capable of performing are patent eligible if properly claimed. *Id*. at 1313; (2)

9   Defendant has the burden of proving, using "record evidence," not just "attorney's argument," that

10  preemption exists such that any process must use the claimed invention to achieve the desired result.

11  *Id*. at 1315 (The "concern here is whether the claimed genus of rules preempts all techniques for

12  automating 3-D animation that rely on rules"); (3) the abstract idea exception should only be applied

13  to prevent patenting of claims that abstractly cover results where it matters not by what process or

14  machinery the result is accomplished, and the inquiry is whether the claims at issue "focus on a

15  specific means or method that improves the relevant technology or are instead directed to a result

16  or effect that itself is the abstract idea…" *Id*. at 1314.; (4) claims directed to rules embodied in

17  software processed by general purpose computers are patent eligible, such as claims that use limited

18  rules in a process specifically designed to achieve an improved technological result in conventional

19  industry practice. *Id*. at 1312; (5) the automatic use of rules of a particular type was a specific

20  asserted improvement in the relevant technology and thus patentable. *Id*. at 1314; (7) "The concern

21  underlying the exceptions to § 101 is not tangibility, but preemption." *Id*. at 1315; and 8) courts

22  must be careful to avoid oversimplifying the claims by looking at them generally and failing to

23  account for the specific requirements of the claims. *Id*.

24        Where, as here, the claimed invention is described narrowly enough, and focused on solving

25  a specific problem that exists only in the technical world. The patent claims are directed to

26  automating processes that are performed by humans, so that the improvements create significant

27  efficiencies and cost reductions benefits. To overly simply the invention would completely unmoor

28  the analysis from the claim language. The innovations in this case are analogous to those in *Enfish*,

1  including machine-assisted processes that automate tasks that humans are capable of performing,

2  claimed genus of rules that does not preempt all techniques for automating machine-assisted process

3  of retrieving health reports.

### 2.     Step Two: The Asserted Claims Contain an Inventive Concept

5  Because the Asserted Claims pass step one of the *Alice*/*Mayo* inquiry, an analysis of the

6  second step is not necessary. Even assuming (not conceded) that the claims are directed to an

7  abstract idea, the claims recite an "inventive concept" that provide "significantly more" than any

8  alleged abstract idea and transfer this idea into a patent-eligible application. *Alice*, 134 S. Ct. at

9  2357-58.

10  As the Federal Circuit explained in *Bascom*, an inventive concept "may arise in one or more

11  of the individual claim limitations or in the ordered combination of the limitations." 2016 WL

12  3514158 at *6. Here, the Asserted Claims evidence an inventive concept under both tests.

13  Furthermore, the "ordered combination" of claim elements cover "significantly more" than the idea

14  of understanding a health report. As in *Bascom*, the claims as a whole represent a "non-conventional

15  and non-generic arrangement" of the various systems including the personal assistance device,

16  reporting system, knowledge-graphing system, and query-interrogation system, using a machine-

17  assisted process to combine the systems to solve problems in the art; this is a "technical

18  improvement" to the retrieval of health reports done in the prior art. *Id*. The claims are directed to

19  a "specific, discrete implementation" of retrieving information from a health report through a

20  machine-assisted interrogation process. *Id*. at *7.

21  The Asserted Claims, moreover, cover an inventive concept under the Federal Circuit's

22  holdings in *DDR Holdings* and *CellzDirect*, including because they "improve[] an existing

23  technological process." *CellzDirect*, 2016 WL 3606624 at *6 ("Under step two, claims that are

24  'direct to' a patent-eligible concept, yet also 'improve[] an existing technological process," are

25  sufficient to 'transform[] the process into an inventive application' of the patent ineligible

26  concept."). Like the claims found patent-eligible in *DDR Holdings*, the "claimed solution is

27  necessarily rooted in computer technology including machine-assisted processes, knowledge

28  graphing systems, and query-interrogation system technology in order to overcome a problem

1  specifically arising in the realm of machine-learning systems [*i.e.*, automating retrieval of health

2  reports and providing information to users by the creation of the knowledge corpus through the

3  knowledge-graphing system]." *Id*. at 1257.

4  **C.    Defendant's Analysis is Legally and Factually Erroneous**

5  Defendant's Motion devalues the inventions embodied in the claims and relies on an

6  oversimplification of the claims to make them appear simple and abstract. *See* Doc #25 at 9, *passim*.

7  Defendant's Motion, moreover, offers unsupported arguments complete with inapposite case law

8  that fail to erase the fact that the Asserted Claims are directed to patent-eligible subject matter. *Id*.

9  Defendant exacerbates this error by ignoring key claim elements when oversimplifying what the

10  Defendant asserts the claims boil down to. Without limitation, Defendant fails to address that

11  OptraHealth's patent improves retrieval and analysis of health reports using a knowledge-graphing

12  system, an innovating method in the realm of machine-learning using a knowledge corpus and

13  knowledge graph, and uses a mobile device to provide the query-interrogation system to the

14  consumer. An appreciation of the problem that the inventors solved is an important prerequisite to

15  understanding what the claims are "directed to" during a § 101 inquiry. Notably, other than to quote

16  a portion of the preamble that summarizes the field of the invention (for "retrieving information

17  from a health report"), Defendant's gross oversimplification in the "directed to" analysis fails to

18  mention a single element of the claims, much less specific language of the particular elements of

19  the claims (e.g., including knowledge graph, knowledge corpus, machine-learning, query-

20  interrogation system, etc.). *Id*. The specific elements provide the inventive step – because the claim

21  must be evaluated as a whole.

22  For example, the medical assistant and doctor analog cited by Defendant is the inferior prior

23  art that the claims are improving on. *See* Doc #25 at 11. Defendant merely ignores all the inventive

24  aspects that automate the process, and simply ignore that the claims recite "compiling … the

25  knowledge corpus through a knowledge-graphic system… includes a query-related knowledge

26  graph and a report-related knowledge graph…." The knowledge graph is capable of integrating

27  other sources of information ('882 Patent specification at 2:63-65).

28

1       To the extent Defendant argues for the oversimplified construction, there are factual disputes

2  that preclude any dismissal as a matter of law.

3       In contrast to the cited cases by Defendant, OptraHealth's Asserted Claims do not lack steps

4  or limitations to solve the problems outlined herein or to improve the functioning of the technology,

5  including as evidenced by the adoption of the Asserted Claims methods including machine-learning

6  methods to automate and address the problem of retrieving health reports. *See Trading Techs. Int'l,*

7  *Inc. v. CQG, INC.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) ("ineligible claims generally lack

8  steps or limitations specific to solution of a problem, or improvement in the functioning of

9  technology.") Further, OptraHealth reiterates that "at some level" any invention might arguably

10 "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."

11 *Alice*, 134 S. Ct. at 2354 (quoting Mayo, 132 S. Ct. at 1293). But that does not mean that it is patent

12 ineligible. Furthermore, as stated in *Ancora Technologies* [s]oftware can make non-abstract

13 improvements to computer technology…." *Ancora Technologies, Inc. v. HTC America, Inc.*, 908

14 F.3d 1343 (2018).

15      In *XY, LLC v. Trans Ova*, the Federal Circuit reversed a district court's finding that the

16 claims were directed to an abstract idea; the Federal Circuit considered the Supreme Court's

17 jurisprudence on patent eligibility to include the principle that "[l]aws of nature, natural phenomena,

18 and abstract ideas are not patentable" to be tempered by the further Supreme Court instruction that

19 "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

20 phenomena, or abstract ideas,'" citing *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566

21 U.S. 66, 71 (2012), and that further "[t]hus, an invention is not rendered ineligible for patent simply

22 because it involves an abstract concept," citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981).

23      Defendant argues that OptraHealth's claims contain abstract concepts because the patent is

24 directed to using a machine as a tool to perform human interactions including listing a medical

25 assistant and doctor as the analog to steps of the process. *See* Doc #25 at 11-12. Further, Defendant's

26 attempt to identify a comparable situation within the analog world completely fails. First, it is not

27 an accurate analog because it fails to capture the technical improvements of the knowledge graphing

28 system. Second, the attempted analogy of the medical assistant and doctor fails to appreciate the

1  improvements made in the invention by compiling the knowledge corpus for the specific health

2  report that is a machine-assisted self-learning method which is an important improvement to

3  automate the manual process to improve efficiency and reliability of the system. *See McRO v.*

4  *Bandai*, 837 F.3d 1299, 1307 (Fed. Cir. 2016) (finding that automation is patent eligible).

5  **D.    OptraHealth's Claims Pass Muster Under Section 101**

6  OptraHealth's claimed solution amounts to an inventive concept for automating the inferior

7  prior art method for manually retrieving health reports and providing the information to consumers;

8  the claimed solutions resolve the particular problems and inefficiencies with the inferior prior art

9  method for the manual retrieval and communication of health reports just as the claims in *McRO* as

10  well as in *DDR Holdings* were found to be patent-eligible. *See McRO and DDR Holdings*, 773 F.3d

11  at 1259 ("the claimed solution amounts to an inventive concept for resolving this particular Internet-

12  centric problem, rendering the claims patent-eligible").

13  **E.    OptraHealth's Pleads Sufficient Facts Under Twombly-Iqbal**

14  The Federal Rules are well-understood to establish a "notice pleading" system. *Twombly*,

15  550 U.S. at 555. Rule 8 sets forth the basic premise: the complaint must provide "a short and plain

16  statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In

17  *Twombly*, and later in *Iqbal*, the Supreme Court added clarification to Rule 8, providing that to be

18  sufficient, the claims made in a complaint must be plausible. See *Ashcroft v. Iqbal*, 556 U.S. 662,

19  678 (2009). But neither *Twombly* nor *Iqbal* contradict the basic principle that the requirement of

20  Rule 8 is one of "fair notice" of the claim and the basis for it. *Twombly*, 550 U.S. at 555. "[T]he

21  plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply

22  calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the

23  defendant is liable for the misconduct alleged." *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017)

24  *citing Bill of Lading*, 681 F.3d at 1341 (quoting *Twombly*, 550 U.S. at 556). "There is no requirement

25  ... to prove [one's] case at the pleading stage." *Id*.

26  OptraHealth's Amended Complaint alleges sufficient facts to provide a reasonable

27  expectation that discovery will reveal' that the defendant is liable for the misconduct alleged. See

28  *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017).

23

1   OptraHealth has pled direct, indirect, and willful infringement for the Patent-in-Suit

2   with enough specificity such that a reasonable court could conclude that Defendant infringed the

3   Patent-in-Suit. For example, OptraHealth has pled a description of the Patent-in-Suit. *See e.g.*,

4   Amended Compl., ¶¶ 10-20 (heading "Patent-In-Suit"). Further, OptraHealth has identified a

5   specific Defendant product of the "Genetic Testing Chatbot" for Natera as the Accused Product for

6   the allegations of the infringement, putting Defendant on notice of infringement of the Asserted

7   Claims. *See* Compl., ¶ 21, 22. OptraHealth has also alleged that Defendant has willfully infringed

8   the Asserted Claims because Defendant received knowledge of the patent application from Natera;

9   Defendant admitted that development of the Accused Product was based on "documentation that

10  the company [Natera] provided". *See* Compl. ¶ 29, *see also* Exhibit 2 at page 3.

11  Defendant's Motion alleges that OptraHealth did not provide various corresponding

12  components. *See* Doc #25 at 22. Recent cases at the Federal Circuit demonstrate that this level of

13  specificity is not required by the rules. As the Federal Circuit declared in *In Nalco Co. v. Chem-*

14  *Mod, LLC*, "the Federal Rules of Civil Procedure do **not** require a plaintiff to plead facts establishing

15  that each element of an asserted claim is met.' 883 F.3d 1350 (Fed. Cir. 2018) (emphasis added). In

16  the case of *Disc Disease Solutions, Inc. v. VGH Solutions*, the Federal Circuit found conclusory

17  allegations of infringement to be sufficient under *Iqbal*/*Twombly*. 888 F.3d 1256 (Fed. Cir. 2018).

18  Many of defendant's arguments amount to a demand that OptraHealth prove its case at the pleading

19  stage, which is not required by the rules.  *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017).

20  Even if the rules require some level of specificity, the Amended Complaint satisfies the

21  rules. Defendant's Motion alleges that OptraHealth did not provide the corresponding components

22  in the Natera Chatbot for claims elements of the "knowledge graphing system," "query-related

23  knowledge graph and a report-related knowledge graph." The "knowledge graphing system" has a

24  corresponding element in the Accuse Product "Platform" that can be updated without developer

25  time or adding code. *See* Doc #25 at 22, Amended Compl. ¶ 30. The "query-related knowledge

26  graph" is the Accused Product "Platform" that can be updated without developer time or adding

27  code, that interfaces to the customer inquiries. *See* Amended Compl. ¶ 30. The report-related

28

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

1  knowledge graph is the Accused Product part of the "Platform" providing for the chatbot for

2  answering specific genetic test results. *Id*.

3      Defendant claims that the OptraHealth does not have facts from which to infer that BotsCrew

4  performs at least one step in the United States. *See* Doc #25 at 24. Yet, Defendant's own Exhibit C

5  to the Motion including printout of a BotsCrew website page prominently lists a San Francisco,

6  California, USA office with an address of 548 Market St. #39969, San Francisco, California 94104,

7  USA. *See* Doc #25 Exhibit C at 5. Defendant wants to ignore facts that are not convenient. As well,

8  the Amended Complaint alleges the same San Francisco, California, USA office address. *See*

9  Amended Compl. ¶ 2. Also, one client of the Accused Product Natera is alleged to have an office

10  in San Carlos, California, USA. *See* Amended Compl. ¶ 8. These alleged facts are sufficient to raise

11  the inference that Defendant performed the steps of the '882 Patent within the United States, that

12  Defendant performed steps either at their San Francisco, California, USA office or the San Carlos,

13  California, USA of the client Natera.

14      Furthermore, the Accused Product is prominently shown on Defendant's own website,

15  including two sample mobile device images with a "BotsCrew" label on the top left corner of screen.

16  *See* Amended Compl. ¶ 23; Amended Compl. Exhibit 2 at pages 4-5, and 7. This fact provides an

17  additional basis to infer that BotsCrew performs the steps of the patented invention within the

18  United States.

19      The Amended Complaint includes allegations of discussions between OptraHealth and

20  Natera with OptraHealth giving notice of the pending application that eventually was granted as the

21  '882 Patent. *See* Amended Compl. ¶ 8. OptraHealth alleges that Natera had sufficient information

22  to provide the claimed invention for BotsCrew to use as a blueprint in developing the Accused

23  Product. *See* Amended Compl. ¶29. BotsCrew admits that development of the Accused Product was

24  based on "documentation that the company [Natera] provided". *Id*., *see* Amended Compl. Exhibit

25  2 at page 3.

26      Accordingly, OptraHealth's allegations in the Complaint are sufficient to raise a reasonable

27  expectation that discovery will reveal that Defendant is liable for the misconduct alleged,

28  Defendant's Motion to Dismiss OptraHealth's patent infringement claim should be denied

1
2      **V.      <u>CONCLUSION</u>**

3           Including for the reasons noted herein, Defendant has not met their heavy burden of proving

4      unpatentability. Defendant's Motion should be denied for lack of merit, or at a minimum, factual

5      allegations that must be accepted as true and construed in the light most favorable to OptraHealth

6      preclude granting the motion.

7
8      Respectfully Submitted,

9      DATED: April 19, 2021                    **THE ZHEN LAW FIRM**

10
11                                              By: _____*/s/ Chris Zhen*_____
12                                                        Chris Zhen
                                                         SBN: 275575
13                                              Attorneys for Plaintiff
                                                *OptraHealth, Inc.*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28