1
2
3
4
5

CHRIS ZHEN (State Bar No. 275575)
chris.zhen@zhenlawfirm.com
HOGAN GANSCHOW (State Bar No. 256137)
hogan.ganschow@zhenlawfirm.com
ZHEN LAW FIRM
5670 Wilshire Blvd #1800
Los Angeles, CA 90036
Telephone: (213) 935-0715

6
7

*Attorneys for Plaintiff*
OptraHealth, Inc.

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

**SAN JOSE DIVISION**

10
11

12

OPTRAHEALTH, INC.,

Case No.  5:20-cv-8096-EJD

13

Plaintiff,

14

v.

15
16

BOTSCREW, INC.,

17

Defendant.

18
19
20

**OPTRAHEALTH, INC.'S OPPOSITION TO BOTSCREW'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

**Date:** **August 23, 2021**
**Time:** **9:00 a.m.**
**Judge:** **Honorable Edward J. Davila**
**Courtroom:** **4**

21
22
23
24
25
26
27
28

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1

## NOTICE OF MOTION

2     Plaintiff OptraHealth, Inc. ("OptraHealth"), hereby respectfully files this Response to the

3  Rule 12(b)(6) Motion to Dismiss ("Motion") alleging the patent-in-suit is invalid under 35 U.S.C.

4  § 101 and the Amended Complaint[1] is not adequately plead. (Doc. 33.) This Response is based on

5  the attached Memorandum of Points and Authorities, the Court's record in this action, including

6  OptraHealth's Amended Complaint, the patent-in-suit, their prosecution histories, all matters of

7  which the Court may take notice, and any other evidence and oral arguments presented at the hearing

8  of the Motion or requested by the Court. Accordingly, OptraHealth hereby respectfully requests this

9  Court enter Orders denying Defendant's motion to dismiss for failure to state a claim under Rule

10  12(b)(6).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

27  _____
[1] Plaintiff OptraHealth's amended pleading was titled "Amended Complaint for Patent
Infringement" (Doc. 30.) Defendant's Motion, however, refers to "First Amended Complaint" or
28  "FAC". Both terms will be used interchangeably to refer to the same Amended Complaint
pleading.

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................ iv

Cases .......................................................................................................... iv

Statutes ...................................................................................................... vi

Rules .......................................................................................................... vi

**MEMORANDUM OF POINTS AND AUTHORITIES**.............................1

I.      INTRODUCTION ..............................................................................1

II.     LEGAL STANDARDS .......................................................................3

A.  Patent Eligibility Under Section 101 .........................................3

1.      Step One: Whether Claims Are "Directed to"
        a Patent-Ineligible Concept..................................................4

2.      Step Two: Whether the Claims Contain an "Inventive Concept"..........5

B.  Motions Under Rule 12(b)6........................................................6

C.  *Twombly–Iqbal* Pleading Standard ...........................................7

III.    FACTUAL BACKGROUND...............................................................8

A.  The State of the Art and Problems Sought to be
    Solved by the Relevant Claimed Invention ...............................8

B.  The Solutions Devised by the Relevant Claimed Invention
    (i.e., What the Asserted Claims are Directed to) .......................9

C.  The Claimed Invention Has Multiple Inventive Aspects...................9

1.  The Claimed Invention Has Many Concrete Aspects.........................10

2.  The Claim Invention Has Many Concrete Benefits, Including to Their
    Inventiveness.........................................................................10

IV.     ARGUMENT......................................................................................11

A.  The Claims at Issue Are Directed to Patent-Eligible Subject Matter ..............11

B.  The Asserted Claims Are Patent-Eligible Under Both Steps
    of the *Alice/Mayo* Inquiry ..............................................................11

1.  Step One: The Asserted Claims Are Not Directed to an
    Abstract Idea ......................................................................................11

2.  Step Two: The Asserted Claims Contain an Inventive Concept..........14

C.  Defendant's Analysis is Legally and Factually Erroneous .............................15

D.  OptraHealth's Claims Pass Muster Under Section 101 ..................................17

E.  OptraHealth Pleads Sufficient Facts Under *Twombly-Iqbal*...........................17

V.      CONCLUSION....................................................................................................21

**TABLE OF AUTHORITIES**

*Cases*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,

    728 F.3d 1336 (Fed. Cir. 2013)...............................................................................6

*Alice Corp. Pty. V. CLS Bank Int'l*,

    134 S. Ct. 2347 (2014)...............................................................3, 5, 11, 14, 14, 16

*Ancora Technologies, Inc. v. HTC America, Inc.*,

    908 F.3d 1343 (2018)....................................................................................4, 16

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009).................................................................................6, 7, 17

*Bascom Global Interest Servs., Inc. v. AT&T Mobility, LLC*,

    827 F.3d 1341 (Fed. Cir. 2016).............................................................5, 7, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................7, 17

*Bill of Lading, 681 F.3d at 1341 (Fed. Cir. 2017)*............................................................17

*Cellspin Soft, Inc. v. Fitbit, Inc.*,

    927 F.3d 1306 (Fed. Cir. 2019).................................................................................6

*Cousins v. Lockyer*,

    568 F.3d 1063 (9th Cir. 2019) ...............................................................................6

*Diamond v. Diehr*, 450 U.S. 175, 187 (1981)....................................................................16

*Disc Disease Solutions, Inc. v. VGH Solutions*, 888 F.3d 1256 (Fed. Cir. 2018).............18

*DDR Holdings, LLC v. Hotels.com L.P.*,

    773 F.3d 1245 (Fed. Cir. 2014)...........................................................5, 11, 14, 17

*Elec. Power Grp., LLC v. Alstom S.A.*,

    830 F.3d 1350 (Fed. Cir. 2016).................................................................5, 12, 13

*Enfish, LLC v. Microsoft Corp.*,

    822 F.3d 1327 (Fed. Cir. 2016)..........................................................4, 11, 12, 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,

    879 F.3d 1299, 1303 (Fed. Cir. 2018)................................................................4, 5

*Fleming v. Pickard*,

    581 F.3d 922 (9th Cir. 2019) ................................................................6

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,

    714 F.3d 1277, 1283 (Fed. Cir. 2013).....................................................7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) ............7, 8, 17, 18

*Mace v. Ocwen Loan Servicing, LLC*,

    No. 16-CV-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018) ...................6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).........7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

    132 S. Ct. 1289 (2012)........................................................3, 11, 14, 16

*McRO v. Bandai*, 837 F.3d 1299 (Fed. Cir. 2016)................................13, 13, 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) ................................................................6

*Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746 (2007) ....................................20

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) ......................................18

*Procter & Gamble Co. v. QuantifiCare Inc.*, No. 17-CV-03061-LHK, 2017 WL

    6497629, at *25 (N.D. Cal. Dec 19, 2017) ................................................6

*Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2009)....................20

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,

    827 F.3d 1042 (Fed. Cir. 2016)..................................................4, 5, 14

*Trading Techs. Int'l, Inc. v. CQG, INC.*,

    675 F. App'x 1001 (Fed. Cir. 2017) ................................................16

*Ultramercial, Inc. v. Hulu, LLC*,

    772 F.3d 709 (Fed. Cir. 2014)................................................................3

*XY, LLC v. Trans Ova Genetics, LC*,

    968 F.3d 1323 (Fed. Cir. 2020)..........................................................16

1   **Statutes**

2   35 U.S.C. § 101

3   **Rules**

4   Fed. R. Civ. P. 8(a)(2)

5   Fed. R. Civ. P. 12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Amended Complaint for patent infringement that is challenged contains enough facts to state a claim that is plausible on its face.

Defendant has not met their high burden, especially at the pleadings stage, of overcoming the presumption of validity and proving by clear and convincing evidence that claims 1 and 3 from U.S. Patent No. 10,754,882 ("Asserted Claims" of the '882 Patent or "Patent-in-Suit") are directed to an ineligible abstract idea. Likewise, Defendant has not met their high burden at the pleadings stage of overcoming the presumption of validity and proving by clear and convincing evidence, with mere argument, that the limitations of the Asserted Claims are somehow routine, well-understood, conventional, generic, pre-existing, commonly used, well-known, previously known, typical, and the like, including when viewed by one of ordinary skill in the art of as of the October 24, 2017 priority date for the '882 Patent.

Defendant ignores important claim limitations, and they ignore the claims as a whole, including as an ordered combination when erroneously alleging that the claims are directed toward an abstract idea of "simplify[ing] the process of understanding a health report." Motion 1. Analogizing the patented invention to a practice that consists entirely of humans performing tasks misses the point of the invention which is to automate tasks that humans are capable of performing.

OptraHealth invented specific methods whereby health reports are retrieved through a machine-assisted interrogation process consisting of a personal assistance device, a reporting system, and knowledge-graphing system, and a query-interrogation system. At the time of the invention of the asserted patent, retrieving and providing accurate results of health reports was time consuming and inefficient. OptraHealth's patent addresses these and other issues, claiming concrete technological improvements, including applying machine-learning to the task to automate the process, using a personal assistance device to provide an interface for a query-interrogation system, and applying a knowledge-graphing system to provide the accurate results to the user. OptraHealth's innovative process frees up physician and other medical professional time and attention to focus on

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

areas that need the medical attention. OptraHealth's patent improved technology, including for the machine-assisted processes, for personal assistance devices, and reporting systems, knowledge-graphing systems, and query-interrogation systems.

Defendant ignores technologically inventive aspects and the actual claim limitations of OptraHealth's patent. Defendant mischaracterizes the specification's discussion of the technological background while omitting discussion of the technological systems and methods described in the specification. Motion 13-14. Further, instead of addressing all elements of the independent claim Defendant merely provides conclusory remarks that the claim limitations are conventional components used in their conventional roles. *Id*. Defendant lacks any support for this assertion, and, given the limited scope at this stage of the proceedings and the material disputes of fact underlying both steps of the *Alice/Mayo* analysis. Defendant cannot clearly establish entitlement to dismissal of the Amended Complaint as a matter of law.

Even if the Court deems the claimed invention set forth in each respective Asserted Claim to be too abstract (which they are not), there is undeniably an inventive concept that appropriately limits the claims.

Defendant's Motion should also be denied because the Asserted Claims are not unduly or improperly preemptive, including of any alleged ends or abstract ideas.

In short, including when viewed properly as a whole, the claims are not abstract; they constitute a concrete application of improved machine-assisted technology and application of a personal assistance device; and they have novel, meaningful, and significant limitations which preclude any finding of unpatentability.

Furthermore, and in the alternative, if the Court deems that a § 101 challenge is appropriate in this case, genuine issues of material fact exist – such as, for example, whether the claimed invention was "well-known," "routine," or "conventional" at the time of the invention; and whether the claims preempt any abstract ideas – that preclude granting a Rule 12(b)(6) Motion especially at this early stage. At a minimum, a decision on a motion to dismiss on the pleadings is inappropriate when there are factual disputes to be resolved, including regarding whether the Asserted Claims have meaningful limitations and/or inventive concepts based upon the state of the art at the time of

1  the invention, and including whether the claimed limitations are routine, well-known, conventional,

2  generic, existing, commonly used, well-known, previously known, typical, and the like at the time

3  of the invention.

4      The Amended Complaint also meets the pleading standard because OptraHealth has pled

5  sufficient factual allegations to make a facially plausible – not probable – claim for relief.

6

7  **II.   LEGAL STANDARDS**

8      **A.   Patent Eligibility Under Section 101**

9      A patent may be obtained for "any new and useful improvement unless the claims of the

10  patent are directed to "[l]aws of nature, natural phenomena, and abstract ideas." *Ultramercial, Inc.*

11  *v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). The concern driving these exceptions is one of

12  pre-emption, or preventing "a monopoly over an abstract idea." *Alice Corp. Pty. v. CLS Bank Int'l*,

13  134 S. Ct. 2347, 2354 (2014).

14      The Supreme Court has cautioned, however, to "tread carefully in construing this

15  exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (citing *Mayo*

16  *Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293-94 (2012)). Indeed, an

17  invention "is not rendered ineligible for patent simply because it involves an abstract concept"

18  because, "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature,

19  natural phenomena, or abstract ideas." *Id*. (internal quotations omitted). Thus, courts must

20  "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that

21  integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-

22  eligible invention." *Id*. OptraHealth's patent describes and claims the latter; they integrate

23  technological building blocks into something more – something patent-eligible.

24      Courts apply a two-step analysis laid out in *Mayo* and reaffirmed in *Alice* to determine

25  whether patent claims are directed to ineligible subject matter. Under step one, the court must

26  "determine whether the claims at issue are directed to a patent-ineligible abstract idea." *Alice*, 134

27  S. Ct. at 2355. If the answer is "no," then the inquiry ends, and the claims are patent-eligible. *Id*. If

28  the answer is "yes," then the court must "consider the elements of each claim both individually and

'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application," or, in other words, whether the claims contain an "inventive concept." *Id*.

### 1. Step One: Whether Claims are "Directed To" a Patent-Ineligible Concept

The Federal Circuit has reiterated that the step one "directed to" inquiry is a "meaningful" one, focusing on "whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon," but, rather, on whether the "character [of the claims] as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotations omitted). "It is not enough merely to identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048 (Fed. Cir. 2016). The Federal Circuit has further cautioned, in considering step one, to not "describ[e] the claims at such a high level of abstraction and untethered from the language of the claims [because doing so] all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Where computer technology is involved, it is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Id*. at 1335. Computers are improved not only through changes in hardware; "[s]oftware can make non-abstract improvements to computer technology…." *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (2018) (citing *Enfish*, 822 F.3d at 1335; *Finjan*, 879 F.3d at 1304). The Federal Circuit has several times held software claims to pass muster under *Alice* step one when sufficiently focused on such improvements. *Id*.

Accordingly, where "the focus of the claims is on the specific asserted improvement in computer capabilities," rather than "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," the claims will pass *Mayo* step one and be held patent-eligible. *Id*. At 1335-36. The Federal Circuit has similarly found that a claim that provides a "new and improved technique" that produces "tangible and useful result[s]" falls "squarely outside of

1  those categories of inventions that are 'directed to' patent-ineligible concepts," and thus are patent-

2  eligible at step one. *CellzDirect*, 827 F.3d at 1048; *see also Elec. Power Grp., LLC v. Alstom S.A.*,

3  830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that claims that focus "on a specific improvement

4  … in how computers could carry out one of their basic functions" are patent-eligible); *Finjan, Inc.*

5  *v. Blue Coat Sys.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (same).

6          **2.      Step Two: Whether the Claims Contain an "Inventive Concept"**

7          If, and only if, a court determines that the claims as a whole are "directed to" an abstract

8  idea, then the court proceeds to step two, which is a "search for an 'inventive concept.'" *Alice*, 134

9  S. Ct. at 2355. Under step two, the court considers "the elements of each claim both individually

10  and 'as an ordered combination' to determine whether the additional elements 'transform the nature

11  of the claim' into a patent-eligible application." *Id*. In other words, the court must determine whether

12  the *entirety* of the *claim* amounts to a "patent upon the [ineligible concept] itself," or whether the

13  claim covers a "patent-eligible application" of the ineligible concept. *Id*. The Federal Circuit has

14  clarified, however, that "[t]he inventive concept inquiry requires more than recognizing that each

15  element, by itself, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility,*

16  *LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Indeed, "an inventive concept can be found in the non-

17  conventional and non-generic arrangement of known, conventional pieces." *Id*.

18          With respect to computer technology, an inventive concept will exist in claims that "recite

19  a specific, discrete implementation of [an] abstract idea," where the "particular arrangement of

20  elements is a technical improvement over prior art [methods]." *Id*. At 1351. In other words, claims

21  directed to "a technology-based solution (not an abstract-idea-based solution implemented with

22  generic technical components in a conventional way) … that overcome[] existing problems [in the

23  art]" are patent-eligible under step two. *Id*. at 1350-1351; *see also DDR Holdings, LLC v.*

24  *Hotels.com L.P.*, 773 F.3d 1245, 1257, 1259 (Fed. Cir. 2014) (holding that claims "amount[ing] to

25  an inventive concept for resolving [a] particular Internet-centric problem" were patent-eligible).

26  /

27  /

28  /

Case No. 5:20-cv-08096-EJD                                        5                     **PLAINTIFF'S RESPONSE IN OPPOSITION**
                                                                                           **TO DEFENDANT'S MOTION TO DISMISS**

1

**B.      Motions Under Rule 12(b)(6)**

2       Defendant's motion is brought under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is

3  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

4  a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

5  2008). "While a complaint 'need not contain detailed factual allegations' to survive a Rule 12(b)(6)

6  motion, 'it must plead enough facts to state a claim to relief that is plausible on its face." *Mace v.*

7  *Ocwen Loan Servicing, LLC*, No. 16-CV-05840-MEJ, 2018 WL 368601, 2* (N.D. Cal. Jan. 11,

8  2018) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation

9  marks and citations omitted)). "A claim is facially plausible when it "allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft*

11  *v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Here, the court must accept

12  "all factual allegations in the complaint as true and construe them in the light most favorable to the

13  non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also Procter &*

14  *Gamble Co. v. QuantifiCare Inc.*, No. 17-CV-03061-LHK, 2017 WL 6497629, at *25 (N.D. Cal.

15  Dec. 19, 2017) (finding an "obligation to construe the pleadings in the light most favorable to

16  Plaintiffs" when a claim presents an "extremely close call"). Issued patents are presumed valid, and

17  such presumption extends to § 101 subject matter eligibility; an alleged infringer asserting an

18  invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing

19  evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F. 3d 1306, Fed. Cir. 2019). "Any fact ... that is

20  pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id*.

21       Although patent-eligibility under § 101 is decided as a matter of law, "[t]his legal conclusion

22  may contain underlying factual issues." *Accenture Global Servs., GmbH v. Guidewire Software,*

23  *Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). The Amended Complaint includes allegations that,

24  when properly accepted as true, preclude the grant of a motion to dismiss. *Cellspin Soft, Inc. v.*

25  *Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) (finding error by district court in ignoring allegations

26  that, when properly accepted as true, preclude the grant of a motion to dismiss).

27       In this case, the Amended Complaint allegations include "claims of the Patent-In-Suit,

28  including the asserted claims, when viewed as a whole, including as an ordered combination, are

1   not merely the recitation of well-understood, routine, or conventional technologies or components."

2   *See* Amended Compl. ¶ 3. The Amended Complaint includes allegations that the claims are

3   improvements over inferior prior art including manual processes undertaken by physician and health

4   care professionals or by using rudimentary computer systems. *Id*. ¶ 4. Accordingly, because the

5   allegations must be accepted as true and construed in the light most favorable to OptraHealth, the

6   motion to dismiss must be rejected. In addition, given the limited record at this stage of the

7   proceedings, early dismissal is premature, especially where the factual record lacks certainty. *See*

8   *Bascom*, 827 F.3d at 1352.

9       **C.    *Twombly–Iqbal* Pleading Standard**

10      All that is required in a pleading is to alert the defendant of what is alleged and plead the

11  elements of the causes of action. Federal Rule of Civil Procedure 8(a)(2) requires only a "short plain

12  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). With

13  that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal

14  sufficiency of the statement of the claim for relief." 5B *C. Wright & A. Miller, Federal Practice and

15  Procedure § 1356*, p. 354 (3d ed. 2004). Under Rule 8(a), a plaintiff need only plead "enough facts

16  to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

17  (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

18  to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft

19  v. Iqbal*, 556 U.S. 662, 678. "The plausibility standard is not akin to a probability requirement, but

20  it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (emphasis added).

21  Further, the Court "accept[s] factual allegations in the complaint as true and construe[s] the

22  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine

23  Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

24      In the past Form 18 was used for patent suits, and the Federal Circuit held that compliance

25  with Form 18 "effectively immunize[d] a claimant from attack regarding the sufficiency of the

26  pleading." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) (citing *K-Tech

27  Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (internal citation

28  omitted)).

On December 1, 2015, Form 18 was abrogated by the Supreme Court; the Federal Circuit, however, state that the Federal Circuit "never recognized such a distinction [between the requirements of Form 18 and the *Iqbal/Twombly* standard]." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017).

OptraHealth provides substantially more allegations regarding BotsCrew's infringement than the minimum required under Rule 8 with sufficient facts to put Defendant on notice of their wrongful actions for the patent infringement cause of action.

### III.   FACTUAL BACKGROUND

#### A.   The State of the Art and Problems Sought to be Solved by the Relevant Claimed Invention

At the time of the Patent-in-Suit's priority date October 24, 2017, it was a cumbersome and time-consuming process to retrieve health reports and communicate the health reports to consumers. While the patent solves the above problem with specific improvements in computer capabilities, Defendant erroneously insinuates that the entirely of the Asserted Claims is directed to "technologies for retrieving information from healthcare reports using a personal assistance device." Motion 9. Including as of the priority date for the Patent-in-Suit, there have been many, albeit inferior, means outside of the claimed invention for achieving the ends of retrieving and providing health reports to consumers. For example, as noted in the specification "understanding a health report requires a considerable amount of time and effort." '882 Patent 1:21-25. Retrieving health reports typically required a physician to read over the report and consult a consumer after the physician has reviewed the health reports and any associated documentation. In some cases, the consumer needs to wait a considerable amount of time leading to a "lack of communication between a healthcare professional and a consumer [that] can lead to many unfavorable circumstances." '882 Patent 1:26-28.

Another inferior method would be to use rudimentary computer capabilities for report retrieval and lookup including using basic keyword searches for the health reports and any associated documentation. Amended Compl. ¶ 13. The health reports and associated documentation

do not have a structured organization so that such basic keyboard searches typically require expertise in use of such systems or technical medical knowledge. *Id*. Most of the terms are unfamiliar to individuals not related to the healthcare field. *Id*. Consumers are typically not provided access to these prior art systems to perform their own queries on the systems. *Id*. Consumers would also not have the technical knowledge to formulate the keywork searches to interact with the prior art systems. *Id*.

**B.** **The Solutions Devised by the Relevant Claimed Invention (i.e., What the Asserted Claims are Direct to)**

The Asserted Claims are directed to specific improvements in personal assistance devices such as mobile devices and machine-assisted functionality and capabilities. Among other things the claimed invention improves functionality of retrieving information from a health report through a machine-assisted interrogation process including a personal assistance system, a reporting system, a knowledge-graphing system, and a query-interrogation system. Rather than being directed to abstract ideas, the Asserted Claims are directed to concrete applications of inventive concepts.

Independent asserted claim 1 of the '882 Patent is direct to, *inter alia*, an improved method of hardware, software, network communication, for retrieving information from a health report through a machine-assisted interrogation process by creating a knowledge graph and knowledge corpus to provide the query-interrogation capability via a personal assistance device.

**C.** **The Claimed Invention Has Multiple Inventive Aspects**

The Asserted Claims have multiple inventive and meaningful aspects. Without limitation, independent claim 1 of the '882 Patent has meaningful and inventive aspects including application of machine-learning to the problem of health report retrieval, creating a knowledge corpus and knowledge-graphing system to provide a query-interrogation system for providing the health reports to consumers. Automation by application of machine-learning automates tasks that would otherwise be inefficient, costly, and unreliably performed by humans.

1        **1.      The Claimed Invention Has Many Concrete Aspects**

There is nothing abstract about the claimed invention. For example, the Asserted Claims have concrete, non-abstract aspects such as the personal assistance device and the computer servers to performed the machine-assisted and automated tasks of compiling the knowledge corpus for specific health reports through a knowledge-graphing system.

**2.      The Claimed Invention Has Many Concrete Benefits, Including to Their Inventiveness**

The patented invention provides a fast, efficient, machine-assisted automated process that reduces need for manpower providing a cost-effective, consistent, and reliable system for consumers. The technology embodied in the Patent-in-Suit solved the above problems of the inferior prior art systems and other problems. The claimed invention comprises superior ways to achieve the ends of retrieving information from a health report using a machine-assisted interrogation process. The claimed process of the asserted claims conveniently and efficiently receives queries relating to health reports from users of the system and provides relevant responses. The claimed invention empowers consumers to inquiry of their health reports via the all-present personal assistance devices or mobile devices without the time-consuming process of scheduling phone calls or in-person visits and waiting for health care professionals to read through their health reports to respond back to the users. In addition, the claimed invention provides for a conversational capability of the query-interrogation process by creating a knowledge corpus through a knowledge-graphing system on the fly – e.g., the creation of the knowledge-graphing system may be prompted by the query from the user of the system. Use of the knowledge corpus enables the innovative method to assimilate and extract a large amount of information related to the query and health report. The claims of the Patent-in-Suit are directed to specific improvements inherent to computers and machine-assisted methods.

Among other things, the claimed invention improves health care computer systems and personal assistances devices such as consumers' personal computers and mobile devices. Including as noted in the Patent-in-Suit, the claimed technologies comprise innovative methods which are faster, avoids costly human intervention including physician time, and allow consumers to directly

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1    inquire regarding their health reports using personal computers or mobile devices. The Patent-in-

2    Suit thus provides concrete applications that improve computer and machine-assisted technology,

3    including processing health reports by compiling a knowledge corpus to provide the capability of a

4    machine-assisted interrogation process.

5

6    **IV.    ARGUMENT**

7        **A.    The Claims at Issue Are Directed to Patent-Eligible Subject Matter**

8        OptraHealth's patent provides tangible innovative improvements to computer technology by

9    providing a query-interrogation system via creating a knowledge corpus and knowledge graphing

10   system that exploits the capabilities of automated systems. Notably, the claims here do not simply

11   use computers as a tool to accomplish an ordinary task or to solve a problem existing in the pen and

12   paper worlds. Rather, the new and specific knowledge graphing system and machine-assisted

13   method provides solutions to recognized technological issues that are unique to mobile devices and

14   machine-assisted methods. Including for these reasons, the Asserted Claims are patent-eligible

15   under both steps of the *Alice/Mayo* inquiry. *See Enfish*, 822 F.3d at 1339; *DDR Holdings*, 773 F.3d

16   at 1257.

17       Defendant fails to meet their burden of clearly establishing that no material issues of fact

18   remain and that they are entitled to judgment as a matter of law. Ultimately, as explained below,

19   Defendant attempts to misconstrue the claims to ignore their true nature, including the specific

20   improvements they provide over conventional machine-assisted methods at the time of the

21   invention. Accordingly, there is no basis to find – especially given the limited record present at this

22   stage of the proceedings – that the Asserted Claims are not patent-eligible.

23       **B.    The Asserted Claims are Patent-Eligible Under Both Steps of the *Alice/Mayo***

24          **Inquiry**

25          **1.    Step One: The Asserted Claims are Not Directed to an Abstract Idea**

26       The Asserted Claims are directed to patent-eligible subject matter—not abstract ideas—

27   including because "the focus of the claims is on [a] specific improvement" to retrieving and

28   providing accessibility to health reports, not "on a process that qualifies as an "abstract idea" for

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

1   which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The Asserted Claims

2   embody an improvement in the functioning of a mobile device by using machine-assisted methods

3   for retrieving health reports, not an abstract idea implemented with conventional components. *See*

4   *id*. at 1338.

5       The Asserted Claims here are analogous to those found patent-eligible in *Enfish*. In *Enfish*,

6   the Federal Circuit explained that while the self-referential database stored the same information, it

7   did so, unlike a relationship database, using a single table with an additional row. *Id*. at 1332-33.

8   The court further explained that the self-referential database provided multiple benefits, including

9   "faster searching of data," "more effective storage of data," and "more flexibility in configuring the

10  database." *Id*. In *Enfish*, the Federal Circuit criticized the district court for oversimplifying the

11  claims as covering simply "the concept of organizing information using tabular formats." *Id*. at

12  1337. The Court cautioned that "describing the claims at such a high level of abstraction and

13  untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the

14  rule." *Id*. The Federal Circuit concluded that the claims were "directed to a specific improvement

15  to the way computers operate," not directed to an abstract idea or preempt any form of storing

16  tabular data, and reversed the district court's summary judgment order. *Id*.

17      As in *Enfish*, there in nothing abstract about the Asserted Claims of OptraHealth's patent.

18  Just as the district court in *Enfish* inappropriately oversimplified the claims as covering "the concept

19  of organizing information using tabular formats," Defendant inappropriately oversimplified the

20  claims here as covering the idea of [simplify[ing]] the process of understanding a health report, or

21  simply "just collections of data". Motion 13, 15. To the contrary, the claims are not simply directed

22  to any form of "understanding a health report", but rather describe "specific improvements"

23  comprising using a machine-assisted method by creating a knowledge corpus through a knowledge

24  graphing system. To simplify the claim language as Defendant has done would completely unmoor

25  the invention from the claim language. *Enfish*, 822 F.3d at 1336. In other words, as in *Enfish*, the

26  claims represent a "specific implementation of a solution of the arts." *Id*. at 1339. Thus, as the

27  Federal Circuit recently reemphasized in *Elec. Power*, the claims here are not directed to an abstract

28  idea because they focus "on a specific improvement … in how computers [i.e., servers and mobile

devices] could carry out one of their basic functions [i.e., using machine-assisted method for retrieving health reports by creating a knowledge corpus to provide a query-interrogation system]." *Elec. Power*, 830 F.3d at 1354. OptraHealth's patent is thus not directed to an abstract idea.

Defendant's reduction of the claim language is precisely the reduction that the Federal Circuit cautioned against. In the *McRO* decision, the Federal Circuit reversed the district court's finding of ineligibility for claims that "aim to automate a 3-D animator's tasks, specifically, determining when to set keyframes and setting those keyframes." *McRO v. Bandai*, 837 F.3d 1299, 1307 (Fed. Cir. 2016). In so holding, the Federal Circuit held, among other things, that (1) processes that automate tasks that humans are capable of performing are patent eligible if properly claimed. *Id*. at 1313; (2) Defendant has the burden of proving, using "record evidence," not just "attorney's argument," that preemption exists such that any process must use the claimed invention to achieve the desired result. *Id*. at 1315 (The "concern here is whether the claimed genus of rules preempts all techniques for automating 3-D animation that rely on rules"); (3) the abstract idea exception should only be applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished, and the inquiry is whether the claims at issue "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea…" *Id*. at 1314.; (4) claims directed to rules embodied in software processed by general purpose computers are patent eligible, such as claims that use limited rules in a process specifically designed to achieve an improved technological result in conventional industry practice. *Id*. at 1312; (5) the automatic use of rules of a particular type was a specific asserted improvement in the relevant technology and thus patentable. *Id*. at 1314; (6) "The concern underlying the exceptions to § 101 is not tangibility, but preemption." *Id*. at 1315; and (7) courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims. *Id*.

Where, as here, the claimed invention is described narrowly enough, and focused on solving a specific problem that exists only in the technical world. The patent claims are directed to automating processes that are performed by humans, so that the improvements create significant efficiencies and cost reductions benefits. To overly simplify the invention would completely

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1   unmoor the analysis from the claim language. The innovations in this case are analogous to those

2   in *Enfish*, including machine-assisted processes that automate tasks that humans are capable of

3   performing and claimed genus of rules that does not preempt all techniques for automating machine-

4   assisted process of retrieving health reports.

5   **2.      Step Two: The Asserted Claims Contain an Inventive Concept**

6        Because the Asserted Claims pass step one of the *Alice*/*Mayo* inquiry, an analysis of the

7   second step is not necessary. Even assuming (not conceded) that the claims are directed to an

8   abstract idea, the claims recite an "inventive concept" that provide "significantly more" than any

9   alleged abstract idea and transfer this idea into a patent-eligible application. *Alice*, 134 S. Ct. at

10  2357-58.

11       As the Federal Circuit explained in *Bascom*, an inventive concept "may arise in one or more

12  of the individual claim limitations or in the ordered combination of the limitations." *Bascom*, 827

13  F.3d at 1349. Here, the Asserted Claims evidence an inventive concept under both tests.

14  Furthermore, the "ordered combination" of claim elements cover "significantly more" than the idea

15  of understanding a health report. As in *Bascom*, the claims as a whole represent a "non-conventional

16  and non-generic arrangement" of the various systems including the personal assistance device,

17  reporting system, knowledge-graphing system, and query-interrogation system, using a machine-

18  assisted process to combine the systems to solve problems in the art; this is a "technical

19  improvement" to the retrieval of health reports done in the prior art. *Id*. The claims are directed to

20  a "specific, discrete implementation" of retrieving information from a health report through a

21  machine-assisted interrogation process. *Id*. at 1350.

22       The Asserted Claims, moreover, cover an inventive concept under the Federal Circuit's

23  holdings in *DDR Holdings* and *CellzDirect*, including because they "improve[] an existing

24  technological process." *CellzDirect*, 827 F.3d at 1050 ("Under step two, claims that are 'directed

25  to' a patent-eligible concept, yet also 'improve[] an existing technological process," are sufficient

26  to 'transform[] the process into an inventive application' of the patent ineligible concept."). Like

27  the claims found patent-eligible in *DDR Holdings*, the "claimed solution is necessarily rooted in

28  computer technology including machine-assisted processes, knowledge graphing systems, and

query-interrogation system technology in order to overcome a problem specifically arising in the realm of machine-learning systems [*i.e.*, automating retrieval of health reports and providing information to users by the creation of the knowledge corpus through the knowledge-graphing system]." *Id.* at 1257.

### C. Defendant's Analysis is Legally and Factually Erroneous

Defendant's Motion devalues the invention embodied in the claims and relies on an oversimplification of the claims to make them appear simple and abstract. Motion 9. Defendant's Motion, moreover, offers unsupported arguments complete with inapposite case law that fail to erase the fact that the Asserted Claims are directed to patent-eligible subject matter. *Id.* Defendant exacerbates this error by ignoring key claim elements when oversimplifying what the Defendant asserts the claims boil down to. Without limitation, Defendant fails to address that OptraHealth's patent improves retrieval and analysis of health reports using a knowledge-graphing system, an innovative method in the realm of machine-learning using a knowledge corpus and knowledge graph, and uses a mobile device to provide the query-interrogation system to the consumer. An appreciation of the problem that the inventors solved is an important prerequisite to understanding what the claims are "directed to" during a § 101 inquiry. Notably, other than to quote a portion of the preamble that summarizes the field of the invention (for "retrieving information from a health report"), Defendant's gross oversimplification in the "directed to" analysis fails to mention a single element of the claims, much less specific language of the particular elements of the claims (e.g., including knowledge graph, knowledge corpus, machine-learning, query-interrogation system, etc.). *Id.* The specific elements provide the inventive step – because the claim must be evaluated as a whole.

For example, the medical assistant and doctor analog cited by Defendant is the inferior prior art that the claims are improving on. Motion 11. Defendant merely ignores all the inventive aspects that automate the process, and simply ignore that the claims recite "compiling … the knowledge corpus through a knowledge-graphic system… includes a query-related knowledge graph and a report-related knowledge graph…." The knowledge graph is capable of integrating other sources of information ('882 Patent 2:63-65).

1    To the extent Defendant argues for the oversimplified construction, there are factual disputes

2    that preclude any dismissal as a matter of law.

3    In contrast to the cited cases by Defendant, OptraHealth's Asserted Claims do not lack steps

4    or limitations to solve the problems outlined herein or to improve the functioning of the technology,

5    including as evidenced by the adoption of the Asserted Claims methods including machine-learning

6    methods to automate and address the problem of retrieving health reports. *See Trading Techs. Int'l,*

7    *Inc. v. CQG, INC.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) ("ineligible claims generally lack

8    steps or limitations specific to solution of a problem, or improvement in the functioning of

9    technology.") Further, OptraHealth reiterates that "at some level" any invention might arguably

10   include "collections of data" as suggested by Defendant or "embody, use, reflect, rest upon, or apply

11   laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132

12   S. Ct. at 1293); Motion 15. But that does not mean that it is patent ineligible. Furthermore, as stated

13   in *Ancora Technologies* "[s]oftware can make non-abstract improvements to computer

14   technology…." *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (2018).

15   In *XY, LLC v. Trans Ova*, the Federal Circuit reversed a district court's finding that the

16   claims were directed to an abstract idea; the Federal Circuit considered the Supreme Court's

17   jurisprudence on patent eligibility to include the principle that "[l]aws of nature, natural phenomena,

18   and abstract ideas are not patentable" to be tempered by the further Supreme Court instruction that

19   "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

20   phenomena, or abstract ideas,'" citing *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566

21   U.S. 66, 71 (2012), and that further "[t]hus, an invention is not rendered ineligible for patent simply

22   because it involves an abstract concept," citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981). *XY,*

23   *LLC v. Trans Ova Genetics*, LC, 968 F.3d 1330 (Fed. Cir. 2020)

24   Defendant argues that OptraHealth's claims contain abstract concepts because the patent is

25   directed to using a machine as a tool to perform human interactions including listing a medical

26   assistant and doctor as the analog to steps of the process. Motion 11-12. Defendant's attempt to

27   identify a comparable situation within the analog world completely fails. First, it is not an accurate

28   analog because it fails to capture the technical improvements of the knowledge graphing system.

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

1   Second, the attempted analogy of the medical assistant and doctor fails to appreciate the

2   improvements made in the invention by compiling the knowledge corpus for the specific health

3   report that is a machine-assisted self-learning method which is an important improvement to

4   automate the manual process to improve efficiency and reliability of the system. *See McRO*, 837

5   F.3d at 1316 (finding that automation is patent eligible).

6           **D.    OptraHealth's Claims Pass Muster Under Section 101**

7           OptraHealth's claimed solution amounts to an inventive concept for automating the inferior

8   prior art method for manually retrieving health reports and providing the information to consumers;

9   the claimed solutions resolve the particular problems and inefficiencies with the inferior prior art

10  method for the manual retrieval and communication of health reports just as the claims in *McRO* as

11  well as in *DDR Holdings* were found to be patent-eligible. *See McRO* 837 F.3d at 1302*; DDR*

12  *Holdings*, 773 F.3d at 1259 ("the claimed solution amounts to an inventive concept for resolving

13  this particular Internet-centric problem, rendering the claims patent-eligible").

14          **E.    OptraHealth Pleads Sufficient Facts Under *Twombly-Iqbal***

15          The Federal Rules are well-understood to establish a "notice pleading" system. *Twombly*,

16  550 U.S. at 555. Rule 8 sets forth the basic premise: the complaint must provide "a short and plain

17  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In

18  *Twombly*, and later in *Iqbal*, the Supreme Court added clarification to Rule 8, providing that to be

19  sufficient, the claims made in a complaint must be plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662,

20  678 (2009). But neither *Twombly* nor *Iqbal* contradict the basic principle that the requirement of

21  Rule 8 is one of "fair notice" of the claim and the basis for it. *Twombly*, 550 U.S. at 555. "[T]he

22  plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply

23  calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the

24  defendant is liable for the misconduct alleged." *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017)

25  *citing Bill of Lading*, 681 F.3d at 1341 (quoting *Twombly*, 550 U.S. at 556). "There is no requirement

26  ... to prove [one's] case at the pleading stage." *Id*.

27

28

1   OptraHealth's Amended Complaint alleges sufficient facts to provide a reasonable

2   expectation that discovery will reveal that the defendant is liable for the misconduct alleged. *See*

3   *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017).

4   OptraHealth has pled direct, indirect, and willful infringement for the Patent-in-Suit

5   with enough specificity such that a reasonable court could conclude that Defendant infringed the

6   Patent-in-Suit. For example, OptraHealth has pled a description of the Patent-in-Suit. *See, e.g.*,

7   Amended Compl., ¶¶ 10-20 (heading "Patent-In-Suit"). Further, OptraHealth has identified a

8   specific Defendant product of the "Genetic Testing Chatbot" for Natera as the Accused Product for

9   the allegations of the infringement, putting Defendant on notice of infringement of the Asserted

10  Claims. Amended Compl., ¶¶ 21, 22. OptraHealth has also alleged that "BotsCrew sells, offers to

11  sell, and/or uses products and services throughout the United States, including in this judicial

12  district, and introduces infringing products and services into the stream of commerce knowing that

13  they would be sold and/or used in this judicial district and elsewhere in the United States." Amended

14  Compl. ¶ 2. OptraHealth has alleged that Defendant has willfully infringed the Asserted Claims

15  because Defendant received knowledge of the patent application from Natera; Defendant admitted

16  that development of the Accused Product was based on "documentation that the company [Natera]

17  provided". Amended Compl. ¶ 29, Amended Compl. Exhibit 2 at 3. At this stage during a motion

18  to dismiss, these factual allegations must be accepted as true. Because they must be accepted as

19  true, the complaint sufficiently pleads direct, indirect, and willful infringement.

20  Defendant's Motion alleges that OptraHealth did not provide various corresponding

21  components. Motion 22. Recent cases at the Federal Circuit demonstrate that this level of specificity

22  is not required by the rules. As the Federal Circuit declared in *In Nalco Co. v. Chem-Mod, LLC*,

23  "the Federal Rules of Civil Procedure do **not** require a plaintiff to plead facts establishing that each

24  element of an asserted claim is met.' 883 F.3d 1350 (Fed. Cir. 2018) (emphasis added). In the case

25  of *Disc Disease Solutions, Inc. v. VGH Solutions*, the Federal Circuit found conclusory allegations

26  of infringement to be sufficient under *Iqbal*/*Twombly*. 888 F.3d 1256 (Fed. Cir. 2018). Many of

27  Defendant's arguments amount to a demand that OptraHealth prove its case at the pleading stage,

28  which is not required by the rules.  *Lifetime Indus., Inc.* 869 F.3d 1372 (Fed. Cir. 2017).

1    In response to Defendant's allegations that OptraHealth did not provide some corresponding

2    components, OptraHealth asserts that the Amended Complaint does adequately provide sufficient

3    information even if the rules require some level of such specificity (not conceded). Defendant

4    alleges that no corresponding elements in the Natera Chatbot were provided for claims elements of

5    the "knowledge graphing system," "query-related knowledge graph and a report-related knowledge

6    graph." Motion 23. The "knowledge graphing system" has a corresponding element in the Accuse

7    Product "Platform" that can be updated without developer time or adding code. Amended Compl.

8    ¶ 30. The "query-related knowledge graph" is the Accused Product "Platform" that can be updated

9    without developer time or adding code, that interfaces to the customer inquiries. *See* Amended

10   Compl. ¶ 30. The report-related knowledge graph is the Accused Product part of the "Platform"

11   providing for the chatbot for answering specific genetic test results. *Id.*

12   Defendant claims that OptraHealth does not have facts from which to infer that BotsCrew

13   performs at least one step in the United States. Motion 25. Yet, Defendant's own Exhibit C to the

14   Motion including a printout of a BotsCrew website page prominently lists a San Francisco,

15   California, USA office with an address of 548 Market St. #39969, San Francisco, California 94104,

16   USA. Motion Exhibit C at 5. Defendant wants to ignore facts that are not convenient. As well, the

17   Amended Complaint alleges the same San Francisco, California, USA office address. Amended

18   Compl. ¶ 2. Also, it is alleged that customer Natera for the Accused Product has an office in San

19   Carlos, California, USA. Amended Compl. ¶ 8. Furthermore, OptraHealth clearly alleges that

20   "BotsCrew sells, offers to sell, and/or uses products and services throughout the United States,

21   including in this judicial district, and introduces infringing products and services into the stream of

22   commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the

23   United States." Amended Compl. ¶ 2.

24   These alleged facts are sufficient to raise the inference that Defendant performed the steps

25   of the '882 Patent within the United States, that Defendant performed steps either at their San

26   Francisco, California, USA office or the San Carlos, California, USA of the client Natera. BotsCrew

27   is demanding that OptraHealth prove its case at this stage which is inappropriate for a motion to

28   dismiss.

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

1    Furthermore, the Accused Product is prominently shown on Defendant's own website,

2    including two sample mobile device images with a "BotsCrew" label on the top left corner of the

3    screen. Amended Compl. ¶ 23; Amended Compl. Exhibit 2 at 4-5, and 7. This fact provides an

4    additional basis to infer that BotsCrew performs the steps of the patented invention within the

5    United States.

6        The Motion on page 2 claims that the Amended Complaint does not explain how

7    "BotsCrew – as opposed to the accused software – practices each step of the asserted method

8    claims," and cites *Ricoh Co. v. Quanta Computers Inc.* for the proposition that selling or offering

9    to sell software does not constitute infringement. *Ricoh Co. v. Quanta Computers Inc.*, however,

10   goes on to state that the "instructions are not patented devices within the meaning of § 271 ***until is***

11   ***it reduced to a machine-readable copy***." *Ricoh Co. v. Quanta Computer Inc.,* 550 F.3d 1325, 1335

12   (Fed. Cir. 2009) citing *Microsoft Corp. v. AT&T Corp.,* 127 S.Ct. 1746 (2007). (emphasis added.)

13   The "software" discussed in *Ricoh Co. v. Quanta Computers Inc.* is software that is detached from

14   an activating medium. *Microsoft Corp. v. AT&T Corp.,* 127 S.Ct. 1746 (2007). Once the software

15   is reduced to a machine-readable copy such as a CD-ROM or within a device such as a mobile

16   phone, it may be considered a patented device within the meaning of § 271. *Id.* OptraHealth presents

17   allegations of BotsCrew's software reduced to a machine-readable copy residing on an activating

18   medium of the memory within the mobile device as shown on BotsCrew's website. Amended

19   Compl. ¶ 23; Amended Compl. Exhibit 2 at 4-5, and 7. OptraHealth is not merely alleging the

20   existence of software detached from any activating medium. Because BotsCrew's software is

21   alleged to be reduced to a machine-readable copy, BotsCrew's software does qualify as an

22   infringing device within the meaning of § 271.

23       The Amended Complaint includes allegations of discussions between OptraHealth and

24   Natera with OptraHealth giving notice of the pending application that eventually was granted as the

25   '882 Patent. Amended Compl. ¶ 8. OptraHealth alleges that Natera had sufficient information to

26   provide the claimed invention for BotsCrew to use as a blueprint in developing the Accused Product.

27   Amended Compl. ¶ 29. BotsCrew admits that development of the Accused Product was based on

28   "documentation that the company [Natera] provided". *Id.*, Amended Compl. Exhibit 2 at 3.

1   The Motion on page 3 alleges that there is absent any specific structure … needed to achieve

2   the recited functionality. This is not the case because the '882 Patent provides example structures

3   including in figures 1 and 2. To the extent that there are factual disputes regarding the specific

4   structures and recited functionality, a motion to dismiss is not appropriate for resolving such issues.

5   Accordingly, OptraHealth's allegations in the Amended Complaint are sufficient to raise a

6   reasonable expectation that discovery will reveal that Defendant is liable for the misconduct alleged,

7   and Defendant's Motion to Dismiss OptraHealth's patent infringement claim should be denied.

8

9   **V.      CONCLUSION**

10  Including for the reasons noted herein, Defendant has not met their heavy burden of proving

11  unpatentability. Defendant's Motion should be denied for lack of merit, or at a minimum, factual

12  allegations that must be accepted as true and construed in the light most favorable to OptraHealth

13  preclude granting the Motion.

14

15  Respectfully Submitted,

16  DATED: May 17, 2021                      **THE ZHEN LAW FIRM**

17

18                                            By: _____*/s/ Chris Zhen*_____
                                                      Chris Zhen
19                                                    SBN: 275575
                                              Attorneys for Plaintiff
20                                            *OptraHealth, Inc.*

21

22

23

24

25

26

27

28