1  Xinlin Li Morrow (State Bar No. 281707)
   xinlin@morrowfirm.com
2  **The Morrow Firm, P.C.**
   1880 Century Park E. Suite 815
3  Los Angeles, CA 90067
   (213) 282-8166
4

5  *Attorneys for Defendant*
   BotsCrew, Inc.
6

7

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10  **SAN JOSE DIVISION**

11  OPTRAHEALTH, INC.,                 ) Case No. 5:20-cv-08096-EJD
                                       )
12                                     ) **BOTSCREW, INC.'S REPLY TO**
                  Plaintiff,           ) **MOTION TO DISMISS FOR FAILURE**
13                                     ) **TO STATE A CLAIM UNDER RULE**
         vs.                           ) **12(b)(6)**
14                                     )
   BOTSCREW, INC.,                     )
15                                     ) Date:       August 26, 2021
                                       ) Time:       9:00 a.m.
16                Defendant.           ) Judge:      Honorable Edward J. Davila
                                       ) Courtroom:  4
17                                     )
                                       )
18

19

20

21

22

23

24

25

26

27

28

   No. 5:20-cv-08096-EJD     REPLY TO MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. The Asserted Claims Are Patent Ineligible. .......................................................... 2

        1. Step 1: The Asserted Claims are not directed to claim a patent-eligible technological improvement to a specific problem rooted in technology ................................................... 2

        2. Step 2: The Asserted Claims do not contain an inventive concept. ......................................................................................... 7

        3. There are no factual disputes that would preclude dismissal. .................... 10

    B. Optra Does Not Adequately Plead Infringement. .................................................. 12

III. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) ......................................... 5

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ...................................................... 6, 9

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ........................................................................................................................... 8

*Bascom Research, LLC v. Linkedin, Inc.*, 77 F. Supp. 3d 940 (N.D. Cal. 2015) ............................ 9

*Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058 (N.D. Cal. 2014) ........................... 5, 9, 11

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) .............................. 9

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ................................... 8

*Diamond v. Diehr*, 450 U.S. 175 (1981) ...................................................................................... 11

*E.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) .................................................................................................... 12

*Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ..................................... 2

*Enfish, LLC v. Microsoft Corp.*, 822 F. 3d 1327 (Fed. Cir. 2016) .................................................. 6

*FairWarning IP LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) ..................................... 4

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ................... 11, 12

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) ........................................... 6

*McRo Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ............................ 5

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007) .............................................................. 6, 13

*Mymedicalrecords, Inc. v. Walgreen Co.*, Case No. 2:13-cv-00631-ODW (SHx), 2014 U.S. Dist. LEXIS 176891 (C.D. Cal. Dec. 23, 2014) ................................................. 4

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ...................................... 12

*Orcinus Holdings, LLC v. Synchronoss Techs.*, Inc. 379 F. Supp. 3d 857 (N.D. Cal. 2019) ................................................................................................................................. 7

*Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299 (Fed. Cir. 2006) ............................................. 13

*Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382 (S.D.N.Y. 2018), *aff'd*, Case No. 2019-1235 (Fed. Cir. 2020) ........................................................................... 8, 10

*Rapid Litig. Mgmt. Ltd. v. Cellzdirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016) ............................... 9

*Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2009) .................................... 1, 13

*Salwan v. Iancu*, 825 Fed. Appx. 862 (Fed. Cir. 2020) ................................................................. 4

*SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) .................................................. 10

*Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017) .................................. 5

*TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968 (N.D. Cal. 2017) .......................................... 4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) ............................................................................................................................................... 11

*XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323 (Fed. Cir. 2020) ............................................ 5

**Statutes**

35 U.SC. § 101 ............................................................................................................................ 11, 12

35 U.S.C § 102 ................................................................................................................................. 11

35 U.S.C. § 103 ................................................................................................................................. 11

35 U.S.C. § 271(a) ............................................................................................................................ 13

35 U.S.C. § 271(f) ............................................................................................................................ 13

## I. INTRODUCTION

OptraHealth's ("Optra") opposition does not adequately address any of the fundamental and fatal flaws in the Amended Complaint ("FAC").

*First*, Optra attempts to avoid a finding of abstract idea under *Alice* step one by claiming that the '882 patent amounts to a specific technological improvement to a specific technological problem. But Optra struggles to identify either the specific improvement or the specific problem rooted in technology. Instead, consistent with decisions from multiple courts that have considered eligibility of similar patents relating to management and access of medical records, the '882 patent is directed to the abstract idea of accessing and understanding medical information, a longstanding practice that has been performed by humans for ages. Optra fails to address this body of case law (or any other case law on patent eligibility contrary to its position) entirely.

*Second*, Optra also fails to identify an inventive step that would transform the abstract idea under *Alice* step two. Optra claims, without analysis, that one or more of the individual claim limitations and the claims as a whole in an ordered combination supply the necessary inventive step. But Optra does not even identify the specific claim limitations or the specific order of the combination underlying its argument. Nonetheless, the claim limitations are themselves abstract and the abstract steps claimed in the patent are ordered in a generic and conventional pattern.

*Third*, Optra asserts that factual disputes preclude dismissal at this stage. Not so. The only issues identified by Optra are either irrelevant at this stage or clearly questions of law. To the extent Optra disputes whether "knowledge graphing system" and "knowledge corpus" were well-known, routine, conventional, the patent itself is sufficient to resolve the purported dispute. In any case, the Court need not resolve this purported dispute to determine patent eligibility.

*Lastly*, Optra's opposition further confirms that its infringement allegations insufficient. The opposition in fact raises more questions about the FAC's allegations than it answers. More importantly, Optra's opposition to the clear holding of *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2009)—that merely selling and offering to sell a software that practices a claimed method does not infringe the method claim under §271(a)—is based on misrepresentation of case law and should be rejected.

II. **ARGUMENT**

    A. **The Asserted Claims Are Patent Ineligible.**

The '882 patent is directed to the abstract idea of accessing and understanding medical information, or more broadly, the abstract idea of collecting, analyzing, and displaying medical information. *See Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that a patent focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis" is abstract and patent-ineligible); Mot. at 14-22. And the '882 patent does not contain an inventive step that transforms this abstract idea into a patent-eligible one. Mot. at 22-26. Optra's opposition does not adequately address these fatal flaws of the '882 patent.

    1. *Step 1: The Asserted Claims are not directed to claim a patent-eligible technological improvement to a specific problem rooted in technology*

Optra first attempts to overcome a finding of abstract idea under *Alice* step one by claiming that the '882 patent provides a specific technological improvement to a specific problem rooted in computer technology. But Optra struggles to articulate what the specific technological improvement and the specific technological problem are and relies on inapposite case law.

For example, Optra claims that the '882 patent "provides solutions to recognized technological issues that are unique to mobile devices and machine-assisted methods." Opp. at 18[1]. Yet Optra never identifies what those "recognized" and "unique" *technological* issues are. On the contrary, the only issues Optra identifies relate to inefficiency, cost, and unreliability of *human* operations. *See, e.g., id.* 16 ("Automation by application of machine-learning automates tasks that would otherwise be inefficient, costly, and unreliably performed by **humans**."), 17 ("The patented invention provides a fast, efficient, machine-assisted automated process that reduces need for **manpower** providing a cost-effective, consistent, and reliable system for consumers"), 24 ("OptraHealth's claimed solution amounts to an inventive concept for automating the inferior prior art method for **manually** retrieving health reports and providing the information to consumers….")

---

[1] All page numbers in prior filings refer to the ECF page number in blue at the top of the document.

(emphasis added). As such, the '882 patent is admittedly not directed to improving a problem rooted in computer technology. Rather, as discussed in the motion, the '882 patent is directed to the abstract idea of accessing and understanding medical information, a task long performed by humans. Mot. at 14-22; *infra* at 4-5.

Tellingly, Optra fails to address the intrinsic evidence cited in BotsCrew's motion that shows that the '882 patent explicitly attempts to patent the mental process of accessing and understanding information:

- **Field of the Invention**: "The present invention relates generally to a method of identifying and understanding the information in a health report. More specifically, the present invention ***introduces a method for a user to understand a personal health report through an interrogation process***."

- **Stated Objectives**: "[T]he present invention introduces a method of interrogation that allows the user to understand the content of the health report. The present invention utilizes a set of systems and personal-computing devices that allow the user to directly interact with the present invention. Overall, the present invention intends to ***simplify the process of understanding a health report***."

- **Detailed Descriptions of the Invention**: "The present invention introduces a method that can be used to understand the content of a health report. To do so, the present invention utilizes an interrogation method that allows the user to communicate with a personal assistance device and understand the content of a health report. By utilizing the present invention, ***the user can fully understand a health report and avoid any possible discrepancies***."

'882 patent, 1:10-17, 1:43-49, 2:23-29 (emphasis added); Mot. at 15. Indeed, it appears that Optra agrees that this is the focus of the '882 patent. Opp. at 18 ("'[T]he focus of the claim is on [a] specific improvement' to *retrieving and providing accessibility to health reports*.") (emphasis added).

Optra also claims that the '882 patent claims concrete technological improvements, including (1) "applying machine-learning to the task to automate the process," (2) "using a personal assistance device to provide an interface for a query-interrogation system," and (3) "applying a knowledge-graphing system to provide the accurate results to the user." Opp. at 8.

1  Other than making these conclusory statements, Optra does not explain the *specific* technical
2  means with which the '882 patent allegedly improves existing technology. For example, Optra
3  does not claim that the '882 patent *improves* machine learning, personal assistance device, or
4  knowledge-graphing system, or that the '882 patent uses a new version of these technologies.
5  Rather, even according to Optra, the '882 patent merely "appl[ies]," "us[es]," or "adopt[s]" these
6  existing technologies. Opp. at 8; *see also* Opp. at 16 ("Automation by **application** of machine-
7  learning…"), 19 (the '882 patent "embod[ies] an improvement in the functioning of a mobile
8  device by **using** machine-assisted methods for retrieving health reports."), 23 (claiming "**adoption**
9  of the Asserted Claims methods including machine-learning methods … automate[s] and
10 address[es] the problem of retrieving health reports.") (emphasis added). Thus, even based on
11 Optra's own characterization, the '882 patent does not provide specific technological improvement
12 to existing technology; instead, it merely uses existing technology to improve efficiency of human
13 operations. *See TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 995 (N.D. Cal. 2017)
14 ("Simply because a claimed invention offers benefits within a particular technological
15 environment does not mean that it improves technology itself. Critically, there are no computer or
16 networking technologies, such as algorithms, data structures, or hardware components, which
17 claim 9 specifically *improves*.") (emphasis added).

18      In fact, as discussed in the motion, multiple courts have evaluated similar patents relating
19 to management and access of medical records and found such patents to be directed at abstract
20 ideas. *See Salwan v. Iancu*, 825 Fed. Appx. 862, 866 (Fed. Cir. 2020); *FairWarning IP LLC v.
21 Iatric Sys., Inc.*, 839 F.3d 1089, 1092-93 (Fed. Cir. 2016); *Mymedicalrecords, Inc. v. Walgreen
22 Co.*, Case No. 2:13-cv-00631-ODW (SHx), 2014 U.S. Dist. LEXIS 176891, at *11 (C.D. Cal.
23 Dec. 23, 2014). Optra fails to address these cases (or any other cases on patent eligibility cited in
24 the motion for that matter) completely. *See* Opp. at 18-24.

25      In addition to these cases cited in the motion, this Court has also found a similar patent[2]
26 relating to retrieving medical records and related medical information abstract and patent-

27
28      [2] The representative claim in *Cogent* claims:

ineligible. *Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058 (N.D. Cal. 2014). In *Cogent*, this Court found that "[i]n the medical field, the alleged invention is akin to the longstanding practice of keeping an updated set of folders for supplying doctors with the latest medical knowledge" and the patent at issue merely "describes a computerized method of performing the same task." *Id.* at 1063. Similarly, here, the '882 patent merely describes a computerized method of performing the longstanding practice of retrieving patient medical records and providing the results of the medical records and some other related medical information to the patient.

Instead of addressing case law contrary to its position, Optra's step-one analysis mainly relies on two distinguishable cases: *Enfish* and *McRo*. Opp. at 19-20. They are distinguishable because the claims in those cases, unlike the '882 patent, recite *specific* limitations that improve the relevant technology.[3] *See, e.g.*, *McRo Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299,

---

> A method for providing data to a user from one or more data sets, said method comprising:
>
> accepting from a user and storing one or more search strategies directed to medical literature in data folders wherein said storage is for repeat use by a user, each of said one or more search strategies associated with one or more of said one or more data sets; and
>
> accepting from said user a request to view medical information, and, based on said request, selectively providing data set information in said data folders comprising preselected medical information for said user or users from said one or more data sets, said medical information having been preselected and placed in said folder by a specialist for said user or users and
>
> at least one of (a) medical information from said one or more associated data sets corresponding to one of said search strategies directed to medical literature wherein said medical information is added to the said one or more data sets since the last time said user accessed said one or more associated data sets; or (b) medical information corresponding to one of said search strategies directed to medical literature wherein said medical information is not limited in time.

*Cogent*, 70 F. Supp. 3d at 1061.

[3] Several other cases cited by Optra are similarly distinguishable. *See* Opp. at 23; *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017) (non-precedential opinion) ("The claims require a *specific, structured* graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a *specifically* identified problem in the prior state of art.") (emphasis added); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018) (The patent at issue "addresses a *technological problem with computers*: vulnerability of license-authorization software to hacking" by "relying on *specific and unique* characteristics of certain aspects of the BIOS that … were not previously used in the way now claimed….") (emphasis added); *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1332 (Fed. Cir. 2020) (The patent at issue "recites an improved method of operating a flow cytometry apparatus to sort individual particles in the same sample in real time, and includes a *detailed recitation of the means* for doing so.") (emphasis added).

- 5 –
No. 5:20-cv-08096-EJD   REPLY TO MOTION TO DISMISS

1313 (Fed. Cir. 2016) ("We therefore look to *whether the claims in these patents focus on a specific means or method that improves the relevant technology* or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.") (emphasis added). In *Enfish*, for example, the Federal Circuit found that "*the self-referential table recited in the claims* on appeal is a *specific type of data structure* designed to improve the way a computer stores and retrieves data in memory." *Enfish, LLC v. Microsoft Corp.*, 822 F. 3d 1327, 1338 (Fed. Cir. 2016) (emphasis added). Similarly, *McRo* is distinguishable because "the claims [there] are limited to rules with *specific* characteristics" and "focused on a *specific* asserted improvement in computer animation, i.e., the automatic use of rules of a *particular* type." *McRo*, 837 F.3d at 1313-14 (emphasis added). Those particular rules include specific characteristics such as "defin[ing] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence" as the "first set of rules" and "apply[ing] said first set of rules to each sub-sequence … of timed phonemes." *Id*.

Unlike the claims in *Enfish* and *McRo*, the Asserted Claims here do not recite specific limitations that improve the relevant technology. Optra points to the recitations of "knowledge-graphing system" and "knowledge corpus" (which the claims describe as including two knowledge graphs) in the claims (*see* Opp. at 19), but the claims do not describe or limit *how* the knowledge graphs are created. *See*, *e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) (holding that the asserted claims are directed to an abstract idea because they "claim systems including menus with particular features" and "do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems"); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (holding that the asserted claim is directed to an abstract concept rather than a technical improvement because the claim "simply demands the production of a desired result . . . without any limitation on how to produce that result"). For *Enfish* and *McRo* to be analogous, the '882 patent would need to recite, for example, some specific ways to improve the creation of the knowledge graphs or knowledge corpuses. Instead, the claims here merely recite "compiling a corresponding knowledge corpus for the specific health report through a knowledge-graphing

system, wherein the corresponding knowledge corpus includes a query-related knowledge graph and a report-related knowledge graph." '882 patent at Claim 1(F). The claims do not limit or describe *how* the knowledge graphs and knowledge corpus are created.[4] *Id.* The only limitation on "knowledge corpus" is that it "includes" two knowledge graphs, one related to the query and one related to the report. *Id.* Therefore, the '882 patent is similar to the patents found abstract and invalid in *Apple* and *Interval Licensing*, which describe a desired result but do not claim a particular way of achieving that result.

        **2.**     ***Step 2: The Asserted Claims do not contain an inventive concept.***

Optra claims that the '882 patent contains an inventive step in *Alice* step two. But Optra fails to identify any specific claim limitations or specific "ordered combination" of claim limitations that transform the abstract idea into a patent-eligible one and relies on readily distinguishable case law.

*First*, Optra argues that one or more of the individual claim limitations in the '882 patent contain an inventive concept. Opp. at 21. But other than asserting that "the Asserted Claims evidence an inventive concept under both test" in *Bascom*, Optra does not actually cite any evidence or provide any analysis as to why one or more of the individual claim limitations contain

---

[4] The most detailed description of how a "knowledge graphing system" may be created appears in the '882 patent's abstract, which broadly states that "[t]he knowledge-graphing system, which is generated using artificial intelligence modules, natural language understanding modules, and machine learning modules, is utilized to provide accurate results to the user." '882 patent, Abstract.

This unclaimed description cannot save the '882 patent from abstractness. *See Orcinus Holdings, LLC v. Synchronoss Techs.*, Inc. 379 F. Supp. 3d 857, 882 (N.D. Cal. 2019) ("[U]nder Federal Circuit law, the *Alice* inquiry must focus on the claim language").

And even then, that description fails to describe any *specific* technological improvements anyway. The '882 patent does not *require* or even *disclose* any *specific* artificial intelligence modules, natural language understanding modules, and machine learning modules, much less *specific* improvements to these existing technologies. In fact, "natural language understanding" and "machine learning" only appear once in the '882 patent, in the abstract. "[A]rtificial intelligence" appearance twice, in the abstract and later in a sentence referring to a black box of "a plurality of artificial intelligence (AI) modules." *Id.*, Abstract and 5:12-16.

an inventive concept. Opp. at 21. Nor does Optra even identify any specific claim limitations that allegedly contain an inventive concept. *Id.*

*Second*, Optra asserts that using a machine-assisted process to combine "the personal assistance device, reporting system, knowledge-graphing system, and query-interrogation system" constitutes a "non-conventional and non-generic arrangement" under *Bascom*. *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); Opp. at 21. Optra does not explain what specifically in the "ordered combination" of the various known systems it contends is "non-conventional and non-generic" under *Bascom*. Opp. at 21. The order of these elements as described in the claims, however, cannot be more generic and conventional: the patient inputs information, the system collects and analyzes relevant information, and then the system outputs or displays the result of its analysis to the patient. *See* '882 patent, Claim 1; *see also Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 389 (S.D.N.Y. 2018), *aff'd*, Case No. 2019-1235 (Fed. Cir. 2020) ("[A]lthough 'an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional [elements],' e.g., Bascom, 827 F.3d at 1350, Claim 1's abstract elements are ordered in a generic and conventional pattern – a user inputs information, the system collects and analyzes other relevant information, and then the system displays through a character the result of its analysis.").

*Third*, Optra argues that the '882 patent cover an inventive concept under *DDR Holdings* and *CellzDirect* because it improves an existing technological process. Opp. at 21-22. As discussed above, the '882 patent does not purport to improve existing machine learning, knowledge graphing, or query interrogation systems. And Optra does not and cannot identify any such specific improvement to existing technology because the '882 patent is merely directed to "applying," "using," or "adopting" existing technology to improve efficiency of human operations. Moreover, *DDR Holdings* and *CellzDirect* are distinguishable. In *DDR Holdings*, the patent at issue "address[es] the problem of retaining website visitors … after 'clicking' on an advertisement and activating a hyperlink." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In other words, in *DDR Holdings*, "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer

networks." *Id.* In *CellzDirect*, the patent at issue involved an improved process for preserving liver cells for later use, specifically, by "freezing and thawing [liver cells] *twice*." *Rapid Litig. Mgmt. Ltd. v. Cellzdirect, Inc.*, 827 F.3d 1042, 1051 (Fed. Cir. 2016) (emphasis added). The court found that the "process of preserving [liver cells] by *repeating* those steps was itself far from routine and conventional" when the prior art disclosed only methods of "*one* freeze-thaw cycle." *Id.* (emphasis added). Here, Optra appears to argue that merely using certain technologies, without making any improvements to the technologies themselves, somehow constitutes improvement to an existing technological process. This argument is not supported by any case law. In fact, case law supports quite the contrary. *See*, *e.g.*, *Apple*, 842 F.3d at 1240-41.

In addition, under *Alice* step two, this Court's decision in *Cogent* is once again exactly on point. There, the patentee argued that "an enhanced interface" with "an automated search and matching function that identifies and supplies new medical literature" provides the necessary inventive step. *Cogent*, 70 F. Supp. 3d at 1064. But this Court rejected that argument, holding that "even if Cogent is right that no previous software system implemented a similar feature, the court need only consider the resourcefulness of the human mind in manually preselecting medical information that is not literally within the search terms supplied by the user" and concluding that the patent at issue "claims no more than a computer automation of what 'can be performed in the human mind, or by a human using a pen and paper.'" *Id.* at 1064-65 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)). So too here. Even if no previous software system implemented medical record retrieval using "knowledge graph" or "knowledge corpus," the Court need only consider the resourcefulness of the human mind in generating associations of related information in a collection of data. After all, even according to the '882 patent's specification[5], a "report-related[6] knowledge-graph" is broadly defined as "a collection of data from the report and related information from other data sources, organized as a graph of associations of various healthcare entities." '882 patent at 3:15-18. This definition of "knowledge

---

[5] The claims in the '882 patent do not provide any specifics on how the knowledge-graphing system and knowledge corpus are created or set any limitations on what a knowledge graph is.

[6] Neither the claims nor the specification of the '882 patent define the "query-related knowledge graph," but presumably it is a similar collection of data.

graph" is itself an abstract idea and cannot supply an inventive step. *See Bascom Research, LLC v. Linkedin, Inc.*, 77 F. Supp. 3d 940, 950 (N.D. Cal. 2015) ("Notably, the concept of establishing, storing and using associations between documents can also be performed mentally."); *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("There is, in short, nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas."). And a "knowledge corpus" merely "includes a query-related knowledge graph and a report-related knowledge graph." '882 patent, Claim 1(F); *see also id.* 2:58-60 ("The corresponding knowledge corpus consists of a query-related knowledge graph and a report-related knowledge graph."). The "knowledge graphing system" and "knowledge corpus" are thus no different from the "enhanced interface" in *Cogent*, which this Court found to be insufficient to supply the inventive step under *Alice* step two.

Optra also criticizes BotsCrew's motion for ignoring the claims reciting "knowledge graph," "knowledge corpus," "machine-learning," and "query-interrogation system" or the fact that the knowledge graph is capable of integrating other sources of information. Opp. at 22. This criticism is demonstrably false. First, "machine-learning" does not appear in the claims and only appears once in the abstract. The '882 patent offers no explanation whatsoever as to how the "machine learning modules" limit any claim element. Second, the motion addresses these exact claim elements and the lack of disclosure of any specific means for implementing these functionalities at length. *See, e.g.,* Mot. at 8, 18-20, 22-26. Lastly, being capable of integrating other sources of information cannot save a patent from patent ineligibility. *See, e.g.*, *Pers. Beasties*, 341 F. Supp. 3d at 389 (invalidating a patent under section 101 even though "the system collects and analyzes other relevant information….").

### 3. *There are no factual disputes that would preclude dismissal.*

Optra claims, without analysis or legal support, that genuine issues of material facts preclude this Court from granting a Rule 12(b)(6) motion. Opp. at 9-10. None of the issues raised by Optra, however, precludes dismissal at this time.

The first issue Optra identifies is "whether the claimed invention was 'well-known,' 'routine,' or 'conventional' at the time of the invention when viewed by one of ordinary skill in the art as of the October 24, 2017 priority date.[7] Opp. at 8-9. But whether the claimed invention as a whole is novel relates to patent invalidity under §§ 102 and 103, not § 101. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of **no relevance** in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (emphasis in original) (quoting *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."). Therefore, as a matter of law, the purported factual dispute identified by Optra cannot preclude dismissal based on § 101.

To the extent Optra argues that there are factual disputes relating to whether the patent involves more than well-known, routine, or conventional activities to perform an abstract idea, specifically, whether the claimed "knowledge-graphing system," and "knowledge corpus" improve existing technologies or are simply existing technologies themselves, there are no material factual disputes. The '882 patent does not claim to have either invented or improved the "knowledge-graphing system" and "knowledge corpus." In fact, the '882 patent only describes these functions in terms of their desired results, and not the specific technical means to achieve these results. *See, e.g.*, '882 Patent, claim 1(F), at 2:58-60, 3:15-18. In addition, any purported factual disputes relating to these claim limitations would not preclude dismissal. This is so because "[e]ven if … no previous software system implemented a similar feature," as discussed above on pages 9-10, the claimed "knowledge-graphing system" and "knowledge corpus" are themselves abstract ideas that cannot supply the inventive step under *Alice* step two. *Cogent*, 70 F. Supp. 3d at 1064-65.

---

[7] Optra also identifies a number of similar issues, such as "whether the Asserted Claims have meaningful limitations and/or inventive concepts based upon the state of the art at the time of the invention" and "whether the claimed limitations are routine, well-known, conventional, generic, existing, commonly used, well-known, previously known, typical, and the like at the time of the invention." Opp. at 9-10. These issues do not preclude dismissal for the same reasons discussed here.

The second issue Optra identifies is "whether the claims preempt any abstract ideas." Opp. at 9. But the issue of preemption is part of the invalidity analysis under § 101, which is clearly a question of law. *Intellectual Ventures*, 838 F.3d at 1312 ("Patent eligibility under § 101 is an issue of law …."). Optra does not identify any underlying issues of fact relating to preemption.

### B. Optra Does Not Adequately Plead Infringement.

Optra's opposition further confirms that its infringement allegations are insufficient.

*First*, contrary to Optra's claim that BotsCrew's motion "amount[s] to a demand that OptraHealth prove its case at the pleading stage," Optra's FAC fails to provide *notice* to BotsCrew what specific components of the accused chatbot are alleged to practice claim elements (F)-(G). Opp. at 25. Optra's opposition in fact raises more questions than it answers. According to Optra, the same "Accused Product 'Platform' that can be updated without developer time or adding code" ostensibly meets both the "knowledge graphing system" and "query-related knowledge graph" elements. Opp. at 26. And the "Accused Product part of the 'Platform' providing for the chatbot for answering specific genetic test results" apparently *is* the "report-related knowledge graph." *Id.* But the problem is there is only one "platform" in the Accused Product (*see* FAC, Ex. 2) and neither the FAC nor Optra's opposition provides any notice to BotsCrew as to *how* the platform or *what* portion of the platform allegedly practices claim elements (F)-(G). Optra's direct infringement allegations thus fail under the "notice pleading" standard of *Twombly* and *Iqbal*. *See E.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016) (dismissing direct infringement claim that fails to plausibly allege that the accused products practice "each of the limitations").

*Second*, Optra claims that it alleges sufficient facts that BotsCrew performs at least one step of the claimed method in the United States because BotsCrew's website lists a U.S. address and that one of BotsCrew's customers is alleged to have an office in the United States.[8] Opp. at 26. But merely having a mailing address in the United States does not give rise to the inference

---

[8] Optra also claims that the fact the Accused Product is shown on BotsCrew's website somehow provides a basis to infer that BotsCrew performs the steps of the '882 patent within the United States. Opp. at 27. Optra fails to explain how a webpage displaying the accused product supports an inference that BotsCrew *performs* the claimed steps *in the United States*.

that BotsCrew has performed *each step* of the claimed method in the United States. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005). Optra further claims that its allegation that "BotsCrew sells, offers to sell, and/or uses products and services throughout the United States" supports an inference that BotsCrew *perform*s the claimed steps in the United States. But as discussed below and in the motion, selling and offering to sell a software that practices a claimed method cannot infringe a method claim as a matter of law. The mere allegation that BotsCrew sells, offers to sell, and/or uses certain unspecified "services" also falls short of sufficiently pleading that BotsCrew has performed *each* claimed step in the United States.

*Third*, Optra attempts to distinguish *Ricoh* by **misquoting** case law to fit Optra's argument. In *Ricoh*, the Federal Circuit "h[e]ld that a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2009). The *Ricoh* court went on to quote *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007) for the slightly different proposition that "as a set of instructions, software is **not a component of a patented device** within the meaning of § 271**(f)** until it is reduced to a machine-readable copy." *Ricoh*, 550 F.3d at 1335 (emphasis added). Optra's opposition, however, purportedly includes this quote from *Ricoh* but conveniently **modifies** the quote to fit Optra's argument better. Opp. at 27 ("*Ricoh* …, however, goes on to state that the 'instructions are not patented devices within the meaning of § 271 ***until is it*** [sic] ***reduced to a machine-readable copy***.'") (emphasis in original). Critically, the *Microsoft* case's discussion relates to contributory infringement[9] under § 271**(f)**, which prohibits a U.S. supplier from supplying a patented invention's "component" for combination abroad, and has no bearing on direct infringement under § 271(a). *See Microsoft*, 550 U.S. 437, 449 (2007) ("Abstract software code is an idea without physical embodiment, and as such, it does not match § 271(f)'s categorization: 'components' amenable to 'combination.'"). Optra's misrepresentation of case law, of course, cannot overcome the clear holding in *Ricoh* that selling or offering to sell software containing instructions to perform a patented method does not constitute direct infringement under

---

[9] Optra does not allege contributory infringement in its FAC.

- 13 –
No. 5:20-cv-08096-EJD                           REPLY TO MOTION TO DISMISS

§ 271(a). *See also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 & n.12 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."). Because Optra has no actual legal authority supporting its claim that selling or offering to sell software, even if reduced to machine-readable copy, directly infringes method claims, its claim should be rejected. And because the FAC only accuses the "Accused Product" (which is software)—not BotsCrew or any of BotsCrew's customers—of performing the claimed method, it fails to state a claim of direct infringement. *See* FAC ¶ 28 ("[T]he Accused Product performs methods for ….").

As Optra's direct infringement claim fails, so do its induced and willful infringement claims, which depend on Optra's successful pleading of direction infringement.

## III.  CONCLUSION

Because the '882 patent claims an inherently abstract idea with no transformative inventive steps and because Optra fails to plead infringement, BotsCrew respectfully requests that the Court dismiss the First Amended Complaint.

Dated:  May 24, 2021                                    Respectfully submitted,

                                                        THE MORROW FIRM, P.C.


                                                        By: */s/ Xinlin Li Morrow*
                                                        Xinlin Li Morrow
                                                        xinlin@morrowfirm.com
                                                        The Morrow Firm, P.C.
                                                        1880 Century Park E, Suite 815
                                                        Los Angeles, CA 90067
                                                        Telephone: (213) 282-8166
                                                        Attorneys for Defendant
                                                        BOTSCREW, INC.